JOSEPH v. HIGGINS LUMBER CO.

(February 17, 1930.  Opinion and Decree.)

E. S. Spiro, of New Orleans, attorney for plaintiff, appellee.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant, appellant.

JANVIER, J.  Adam Joseph, a colored laborer employed by Higgins Lumber Company, was injured on January 20, 1928, in the course of his employment. The injuries were severe, consisting of a compound comminuted fracture of the lower third of the tibia of the left leg.

First-aid treatment was given at the Charity Hospital, and later, on the same day, Joseph was removed to the Flint-Goodridge Hospital, where he remained, under the care of defendant's surgeons, until November 26, 1928.  On that day he

was told that he had completely recovered from his injuries, but, as he insisted that he still suffered severely, he was instructed to report back to the surgeons from time to time, until February 13, 1929, on which day he was discharged as cured.

On November 26, 1928, the surgeons were of the opinion that he was cured, but, as he complained of pain, they advised that he allow them to keep him under observation, which they did until February 13, 1929, on which day they, having come to the conclusion that Joseph was malingering, refused further treatment.

Thereupon Joseph consulted an attorney, Mr. Sneed, who sent him to Dr. Gessner for examination. Since the condition of the plaintiff at the time he was discharged by defendant's surgeons and at the present time is the sole question involved, it may be well to note at this point that Dr. Gessner, in testifying as to his condition at the time of the examination by him, said:

" * * * I found complete union of the fragments with no motion in either direction, either anterior-posteriorly or laterally. The motion of his foot was somewhat limited. My opinion at the time was that he ought to lay aside the brace and crutch and walk with a stick. My opinion was that if he laid aside his braces and crutch and walked with a stick, in a couple weeks his leg would be entirely satisfactory, would be in good condition."

Mr. Sneed, upon receiving this report, went no further with the matter, and thereupon Joseph employed his present attorney.

Of course, the question of the physical condition of the plaintiff at the time he was discharged by defendant's surgeons, and at the present time, or, rather, at the time of the trial in the court below, is one which we can determine only by refer-ence to the testimony of the surgeons and of the physician who examined the injured man, and who testified in the court below. There is no doubt whatever that, with the sole exception of one physician, who was placed on the stand by plaintiff, and with the further exception of Dr. Denegre Martin, an eminent surgeon who was appointed by the district judge to make an ex parte examination, and to whose testimony we will later refer, the doctors are of the opinion that he was completely cured when discharged on February 13, 1929, except that, as a result of long disuse, the leg was so stiff that plaintiff would suffer pain for some two or three weeks after returning to work.

The physician who testified for plaintiff admitted that he was not a surgeon, and had not even caused X-ray photographs of the leg to be taken.

Dr. Denegre Martin, the surgeon to whom we have referred, in his written report states:

"These cases are often cured by pressure, such as allowing the patient to walk on the affected limb. In this case, however, I believe other means will have to be resorted to,—either drilling or grafting,—neither of which could have been undertaken much earlier. If, however, nothing were done, the man could, with a brace, resume his former occupation with little or no discomfort, and possibly get a delayed union. I believe this a little uncertain after this lapse of time and especially as the separation of the fragments show the intervention of soft tissue.

"The pain of which he now complains about the ankle, is, in my opinion, due to disuse and will disappear as motion is restored. In his present condition, he may or may not, in his opinion, be able to resume work, sufficient cause being present to substantiate his complaints. If an operation is resorted to, and I would recommend it, it would mean continued disability of

from three to six months. If operation is refused he should be discharged as cured with slight disability."

Dr. Martin's report we consider as, in the main, corroborative of the testimony of the surgeons, and we are well satisfied that Joseph, if he was not completely cured when discharged, was suffering under only slight disability.

The evidence indicates that the trial court was correct in fixing $9.10 as 65 per cent of the average weekly wage. If Joseph had lost the entire leg, he would have been entitled under subparagraph 8 of paragraph (d), subsection 1, of section 8 of Act 85 of 1926, to 65 per cent of his weekly wages for 175 weeks. This subparagraph reads as follows:

"For the loss of a leg, sixty-five per centum of wages during one hundred seventy-five weeks."

Under subparagraph 14 of paragraph (d) of the same section, "a permanent total loss of the use of a member is equivalent to the amputation of the member." It further appears, in subparagraph 15 of paragraph (d) of the same section, that "in all cases involving a permanent partial loss of the use of function of the member mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such member as the disability to such member bears to the total loss of the member. * * * "

These subparagraphs have been interpreted by the Supreme Court of Louisiana in James vs. Spence & Goldstein, 161 La. 1108, 109 So. 917, and it is now certain that, where a member, such as a leg, sustains only a partial loss of its functions, the injured party is entitled to compensation fixed by determining what proportion of the loss of function of that member

has been sustained. In Wolf vs. Louisiana Milk Products Co., 8 La. App. 657, the Court of Appeal for the First Circuit, on rehearing, said:

"Defendant contends that as plaintiff's injury involves the loss of the use of but one member, his leg, that he can not under the language quoted from sub-section (d), be allowed a longer compensation than is provided for, had his leg been amputated, and that the allowance of compensation for the period provided for under subsection (b), is not in harmony with the decision of the Supreme Court in the case above cited. We find that a lack of harmony does exist between the decisions of this Court and that of the Supreme Court, as to the period of compensation to which the plaintiff is entitled and we, therefore, place our decision in line with that of the Supreme Court. The . compensation to which plaintiff is entitled under the law is that fixed by Act 216 of 1924.

"Our former opinion and decree, and the judgment appealed from, are therefore amended and corrected, and plaintiff's compensation is now fixed at 65 per cent of his weekly wage of $18.74 for a period of two hundred weeks instead of as originally ordered. The period of payment to commence July 10, 1926, and be credited with twenty-six weeks following said time of commencement, and as thus amended and corrected our original opinion and decree herein is reinstated and made the final judgment of this Court."

Since Dr. Martin has stated that the disability of the leg is slight, no injustice will be done to plaintiff if we assume that that disability does not exceed 50 per cent. Joseph is therefore entitled to weekly payments of 50 per cent of $9.10 for 175 weeks, less, of course, the amount which he has already been paid by defendant. It appears that the hospital and surgeons' bills, at least to the maximum provided in the act, have been paid by defendant, so that there is no further liability on this score: We feel that the costs in both courts should be paid by defendant.

The district court rendered judgment for plaintiff for 65 per cent of his wages, or $9.10 per week for 400 weeks. We think it was in error.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended so as to read as follows:

It is ordered, adjudged, and decreed that plaintiff do have and recover judgment against defendant in the sum of $4.55 per week for 175 weeks, commencing on January 20, 1928, with 5 per cent interest on all overdue payments, subject to credit of amount already paid; defendant to pay all costs of both courts.