## FORTUNE v. HASPEL BROS, Inc.
### No. 14634.

Court of Appeal of Louisiana. Orleans.
Feb. 18, 1935.

Maurice R. Woulfe, of New Orleans, for appellant.

Sanders, Baldwin, Haspel & Molony, Rene A. Viosca, and Robert Weinstein, all of New Orleans, for appellee.

LECHE, Judge.

Plaintiff, a young colored woman, was employed in the shrinking department of defendant's clothing factory. Her duties consisted in pulling down goods and working the mangle machine. Her employment commenced during the week of January 20, 1932, and on January 31, 1932, she received certain injuries to her hands. On February 1, 1932, she was sent to the physician of defendant's insurer and discharged by him on March 10, 1932, reporting for work during the week of March 23, 1932. On May 10, 1932, she returned to the doctor complaining of stiffness in her fingers, and on May 18, she left defendant's employ. Her wages were $5 per week, and she was paid five weeks' compensation by the insurance company, or $19.50, defendant supplementing this amount so that for the five weeks she was not working plaintiff received her full wages, or $25.

Judgment was rendered in favor of plaintiff in the sum of $14, and from this judgment she has appealed.

The sole question presented here is the amount of compensation due for the injury. Three physicians, one for defendant and two for plaintiff, and all reputable, gave their testimony. It appears that plaintiff's left hand was only slightly injured, and that the controversy centers around the injury to the right hand.

Dr. Menendez diagnosed the injury as first and second degree burns of the palmar and dorsal surfaces of both hands. He said an examination showed the physical impairment confined to the index, middle, and ring fingers of the right hand, the thumb and small finger being normal; that there was a sectricial deformity of the three fingers involved which prevented a full extension of those fingers, but which did not affect closing them or impair the grip. He estimated the loss of normal use of the index finger to be 15 to 25 per cent.; that of the middle finger 30 per cent., and that of the ring finger 10 per cent., his estimate of impairment being based on normal motion of the fingers, taking into consideration the flexion motion, which was unimpaired, as well as the extension motion, which is the motion affected. The condition, he testified, was due to sectricial contraction, or scar tissue contraction.

Dr. Levy testified that there was a contraction of the flexor tendons of the first or index, middle, and ring fingers of the right hand, limiting the motion of extension about 40 per cent., the grip being unimpaired. He estimated the disability of the index finger to be 30 per cent; that of the middle finger to be 50 per cent., and that of the ring finger to be 10 per cent. He stated that the left hand was normal.

Dr. Riley testified that the left hand was normal, but that there was a contraction of the tendons on the right hand; that the grip was not affected, but extension of the fingers was impossible. He estimated the index finger to be impaired 35 or 40 per cent.; the middle finger about 50 per cent., and the ring finger about 35 or 40 per cent.

The learned trial judge assigned no reasons for his judgment and, consequently, we are without the benefit of his method of cal-

culation. Our appreciation of the record is that the injuries complained of are confined to the index, middle, and ring fingers of the right hand, and that these fingers are unimpaired as to grip or closing and affected only as to extension or opening. The three physicians who testified, while not in strict accord in their estimates of (the disability of the members, nevertheless are not so far apart that their testimony cannot be reconciled. Considering both grip and extension and construing the evidence liberally in favor of plaintiff, we believe the disability or loss of normal use to be as follows: First, or index finger, 40 per cent.; middle finger, 50 per cent.; ring finger, 30 per cent.

Section 8, subsec. 1 (d), subds. 2 and 3, of the Compensation Statute (Act No. 20 of 1914, as amended, by Act No. 242 of 1928, p. 357), read as follows:

"2. For the loss of a first finger, commonly called the index finger, sixty-five per centum of wages during thirty weeks.

"3. For the loss of any other finger, or a great toe, sixty-five per centum of wages during twenty weeks."

We construe the above to mean total loss of the member, and, therefore, where the injury is less than total loss, compensation should be computed proportionately.

Subdivision 15 following the two subdivisions above quoted reads as follows: "In all cases involving a permanent partial loss of the use of function of the member mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such member as the disability to such member bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member."

While the medical testimony indicates that continued use will tend to restore the normal functions of the injured members, this is not at all certain, and compensation must be computed on the basis of permanent partial loss of use of the injured members.

In the case of Fulmer v. McDade Gin Co. (La. App.) 142 So. 733, 735, the court said: "In determining the amount of compensation due plaintiff, the trial judge allowed compensation for 75 weeks, at $20 per week, when, in our opinion, the proper method of arriving at the same result is to allow $10 per week, for a total of 150 weeks. If the injury consisted of the loss of the whole hand, the compensation would be $20 per week for 150 weeks, so, if the loss is only 50 per cent., then the compensation is one-half of $20 per week, for 150 weeks; however, the net results of both methods are the same."

See, also, Joseph v. Higgins Lumber Co., 12 La. App. 600, 126 So. 255.

Plaintiff's weekly wage was $5, and 65 per cent. thereof is $3.25. Under the foregoing decisions, therefore, plaintiff is entitled to compensation at the rate that the percentage of impairment of the members bears to $3.25, and for the full number of weeks prescribed by the statute. In other words, she is entitled to 40 per cent. of $3.25 for 30 weeks for the impairment of use of her index finger, 50 per cent. of $3.25 for 20 weeks for the impairment of use of her middle finger, and 30 per cent. of $3.25 for 20 weeks for the impairment of use of her ring finger. But these percentages of $3.25 all amount to less than $3 per week, and $3 per week is the minimum compensation prescribed by the act. In the case of Thornton v. Haynesville Lumber Co., Inc. (La. App.) 155 So. 784, 785, it was said: "The lower court allowed the full 65 per cent. of plaintiff's weekly wage, and reduced the number of weeks to 20. In this respect the judgment is erroneous. The number of weeks is fixed and the reduction should have been in the weekly pay; and, since 20 per cent. of 65 per cent. of plaintiff's weekly wage is less than $3 per week (the minimum fixed by the act), the amount of the award for the impairment to the eye should have been $3 per week for a period of 100 weeks, beginning on the forty-seventh day after the accident."

The total number of weeks involved is 70, being 30 for the index finger and 20 for each of the other two fingers involved, and, raising the compensation to the minimum of $3 per week prescribed by the statute, plaintiff is entitled to compensation at the rate of $3 per week for 70 weeks, subject to a credit of $25, compensation already paid.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended so as to read as follows:

It is ordered, adjudged, and decreed that plaintiff do have and recover judgment against defendant in the sum of $3 per week for 70 weeks, commencing on January 31, 1932, with 5 per cent. interest on all overdue payments, subject to a credit in the amount of $25 already paid; defendant to pay all costs in both courts.

Amended and affirmed.