Plaintiff, John Falgoust, brought this suit to recover workmen's compensation for 400 weeks claiming that he has been totally permanently disabled to do work of any reasonable character as a consequence of an injury sustained to his left elbow while performing duties as a skilled carpenter in the employ of Turner Construction Company and Raymond Concrete Pile Company. In addition to his employers, he joined their compensation insurer, Maryland Casualty Company, as a defendant to the action. His employers were never served with process but, in due course, his claim was recognized against Maryland Casualty Company and this appeal has been prosecuted by it from the adverse decision.
The insurance company admits plaintiff's employment in a hazardous industry and his injury resulting from an accident occurring within the course and scope of his duties. It also concedes that his rate of pay was such as to entitle him to the maximum weekly compensation of $20 and that the injury to his elbow is permanent in the sense that its present condition cannot be healed by medical treatment. It, however, maintains that the Judge of the District Court was in error in finding that plaintiff was totally permanently disabled to do work of any reasonable character for the reason that he is presently engaged by Todd-Johnson Shipyard in New Orleans as a skilled carpenter and has been satisfactorily performing his duties as such for the last year and a half.
There is little or no dispute as to the facts of the case, which we find to be as follows: Plaintiff was employed by Turner Construction Company and Raymond Concrete Pile Company as a skilled carpenter at a wage equal to $1.20 per hour on a 40 hour per week basis. He has followed the carpentry trade for 13 years and knows no other. On July 5th 1943, he sustained an injury to his left elbow while working in a manhole. He reported the accident, received first aid treatment and, on instructions *Page 314 
of a medical attendant of his employers, returned to work. However, later in the day, the injured elbow began to swell and the pain became so intense that plaintiff again called for treatment. He was sent to Hotel Dieu where his arm was X-rayed and put in a plaster cast in which it remained for about three weeks. Thereafter, a metal splint was applied to the arm for an additional two weeks. While the arm was in the metal splint, plaintiff returned to his employment and was given light work to do. He continued doing light work for six weeks, after which time he was "laid off" by his foreman who told him that "we are reducing the force." Subsequently, plaintiff continued to receive diathermy treatments to his injured arm at Higgins Clinic, which was maintained by his employers.
Doctors H. Theodore Simon and John T. O'Ferrall, orthopedic surgeons of New Orleans, examined plaintiff on separate occasions and made similar findings with respect to the nature of the injury of which he complains. They express the opinion that plaintiff received a fracture of the head of the radius, which has united in good position, but that there is some overgrowth of bone as a result of the union, or the formation of a bony block, which limits full extension, pronation and flexion of the left arm. Both doctors agree that the condition is permanent in its nature. They differ, however, in respect to the resultant loss of function of the arm. Dr. Simon estimates the loss of function to be about 25% while Dr. O'Ferrall believes it to be about 50%.
On September 22, 1943, or less than three months after the accident, plaintiff secured employment as a skilled carpenter at Todd-Johnson Shipyard where he has continuously engaged in the performance of his duties as such for a period of more than a year and a half. At the time he applied for employment at the shipyard, he was required to take a physical examination and was accepted despite his injured left arm. The wage he earns at the shipyard is $1.20 per hour on a 40 hour week basis, or exactly the same wage which he was receiving from his employers at the time of the accident.
It is plaintiff's contention that he is permanently totally disabled to do work of any reasonable character within the meaning of paragraph (b) of subsection (1) of Section 8 of the Employers' Liability Act, Act No. 20 of 1914, as amended by Act No. 242 of 1928, notwithstanding the fact that he has been and now is engaged in the performance of duties of a skilled carpenter. This contention is founded on the theory that he was able to secure and still retains his present position as carpenter at Todd-Johnson Shipyard solely and only because of the shortage of manpower and that, while he is able to do skilled finishing work (like cabinet making) with complete success, he is unable to perform all of the duties required of a journeyman carpenter such as climbing scaffolds, etc. In support of this proposition, plaintiff testified accordingly and he also produced, as a witness on his behalf, Mr. Philip H. Guillot, his foreman at Todd-Johnson Shipyard, who testified, in substance, that, while plaintiff is a good carpenter and particularly useful in finishing work, he would hesitate to require him to climb a scaffold or do other heavy work which is usually done by an ordinary carpenter.
On the other hand, the defendant proclaims that it would do violence to the provisions of the Employers' Liability Act, which permits recovery of 65% of wages for a period not exceeding 400 weeks "for injury producing permanent total disability to do work of any reasonable character," to conclude that plaintiff has suffered such a disability as it is shown that he is now successfully pursuing his usual trade and is receiving wages commensurate with those paid to him prior to the accident. And defendant further says that, even though it be conceded that our decision in Ranatza v. Higgins Industries,18 So.2d 202 (now pending in the Supreme Court on writs of review), is correct, that authority does not control the result to be reached in this matter.
The District Judge, in concluding that plaintiff was entitled to recover for total permanent disability, based his holding on our recent decision in Butzman v. Delta Shipbuilding Co.,21 So.2d 80.
In view of these contentions and the opinion of the Judge, it is necessary to examine the decisions in the Ranatza and Butzman cases in order to ascertain the applicability of those matters to the situation existing in the case at hand. The injuries received by plaintiff in this case and plaintiff in the Ranatza case are very similar and they were both skilled carpenters by trade. However, the injury received by Ranatza was to his right arm, whereas, *Page 315 
here, plaintiff's injury is to his left arm. Ranatza testified that he was wholly unable to do carpentry work as the injury to his right arm was such that he could not use a hammer, saw or other tools of the trade and, for that reason, he was compelled to seek employment in another field of endeavor. Here, plaintiff is not in the same position. He can unquestionably use the tools of his trade without difficulty and his only inability to perform all of the duties of his occupation seems to be that he cannot safely climb ladders or scaffolds or do any work which requires the constant use of and strain upon his left arm.
The Ranatza decision was predicated solely on the theory that the plaintiff, by reason of the accident, had been rendered totally incapacitated from thereafter pursuing his usual trade or occupation of carpentry. This conclusion was founded on the pronouncements of the Supreme Court in Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars Inc., 188 La. 1091, 179 So. 6, and other cases, wherein that court has interpreted the words "work of any reasonable character" appearing in paragraph (b) of subsection (1) of Section 8 of the Employers' Liability Act to mean ability to do work of the same or similar nature. And we resolved that the fact that Ranatza was actually earning a substantial wage as a bus driver (although considerably less than the amount which he earned as a carpenter) did not preclude his right to compensation for permanent disability — forasmuch as bus driving could not be regarded as an occupation similar to, or of the same nature as, carpentry.
[1] Albeit, it seems clear to us that the reason which prompted the decision in favor of the claimant in the Ranatza case operates as a rejection to plaintiff's demand in the instant matter. Here, the evidence shows that plaintiff is employed as a carpenter and is earning the same wage which he received prior to the accident. Therefore, it cannot be said that his injury has been such as to deprive him of engaging in his usual trade or occupation. The Employers' Liability Act authorizes the courts to award compensation for permanent total disability only where the employee (by reason of his injury) is unable to do work of any reasonable character which means, according to liberal judicial interpretation, work of the same or similar nature for which the workman is fitted by education and previous experience. Can it be said that plaintiff is not doing work of the same or similar character merely because he and his foreman express doubt that he can perform all of the duties required of a journeyman carpenter when he is actually doing the work required of him as a carpenter in his present employment to the satisfaction of his employer? We think not.
[2] Counsel for plaintiff, however, persists that it would be most unjust to conclude that plaintiff is not entitled to recover for total permanent disability as it is his opinion that plaintiff has been employed by Todd-Johnson Shipyard solely and only because of the shortage of manpower produced by the present global war and he claims that the Judge of the District Court committed error in refusing to permit him to adduce testimony to show that it would be unlikely that plaintiff could obtain employment as a carpenter in normal times. We think that the Judge was correct in refusing to allow the admission of such evidence which, at best, would be of the most speculative character. Judicial decisions must be founded on fact and not upon conjecture. Obviously, opinion evidence as to the future course of human events would be most unreliable — for who can foretell whether an economic depression will develop after the war or whether we will enjoy prosperity and full employment for a decade or more? And then again, who can say with any certainty that plaintiff's ability to do the carpentry work, in which he is presently engaged, will not vouchsafe for him the opportunity for steady employment in the post war era?
The Judge of the District Court was of the opinion that our recent decision in Butzman v. Delta Shipbuilding Co. is authority for the conclusion that plaintiff is totally permanently disabled within the contemplation of the Employers' Liability Act. However, an examination of the opinion in the Butzman case will, we believe, readily demonstrate that the views expressed therein do not offer a solution to the situation existing in the case at bar. Butzman was employed by Delta Shipbuilding Co. as a shipfitter. He suffered a serious fracture of the left leg whilst engaged in the discharge of his duties. After the accident, he attempted, for a period of 90 days, to perform the duties of a shipfitter but was unable to do so and obtained a transfer to the burning department where *Page 316 
he worked continuously until the trial of the case, a year and three months later. It was shown at the hearing that the wages which he was earning as a burner were greater than those he had previously received as a shipfitter; that his usual trade, prior to his employment by the defendant, was ornamental iron worker and ship painter and that, except for a few days prior to the accident, he had never worked as a shipfitter. Under this state of facts, we expressed the opinion that Butzman was not totally permanently disabled to do work of any reasonable character. However, we found ourselves unable to deny recovery to him, in view of the decision of the Supreme Court in Stieffel v. Valentine Sugars, Inc., supra, wherein that Court stated in the course of its opinion (see page 1115 of 188 La. and page 14 of 179 So.) that, "When an injured employee is unable to do work of the same description that he was employed to do when injured, his injury, in contemplation of law, is equal to total disability." Accordingly, we concluded that Butzman must be regarded as being totally permanently disabled, since he was unable to perform the duties of a shipfitter (the type of employment in which he was engaged at the time of the accident) despite the fact that shipfitting was not the usual or normal work for which he was qualified by previous training and experience and despite the fact that he was gainfully employed at laborious work at a wage higher than that received by him at the time of his injury.
Thus, our holding in the Butzman matter was predicated solely upon the above quoted views expressed by the Supreme Court in the Stieffel case and not upon any independent belief of our own that Butzman was totally permanently disabled to do work of any reasonable character. But, even though our ruling there is finally upheld by the Supreme Court (we understand that the case is now pending in that Court on application of the defendant for writs of certiorari and review), we entertain grave doubt that the reason for the maintenance of Butzman's claim furnishes a sound foundation to sustain the plaintiff in the instant matter. Here, we repeat that plaintiff is doing the same work or work of a similar description to that in which he was engaged at the time of the accident and for which he is fitted by his previous training and experience. In truth, the sole basis upon which his claim is founded is that he is not able to do all of the work which is ordinarily required of a journeyman carpenter and that, although he is pursuing the same occupation and is now earning wages on a parity with those received from the employment in which he was injured, he will encounter difficulty in securing employment in the event conditions change. The answer, we think, lies in the fact that his present employment as a carpenter makes it impossible to conclude that he is totally permanently disabled to do work of any reasonable character.
[3] Being of the opinion that plaintiff is not permanently totally disabled within the meaning of paragraph (b) of subsection (1) of Section 8 of the Employers' Liability Act, we finally consider whether he is entitled to additional compensation under any of the other provisions of the law.
Paragraph (c) of the same subsection of the Act, which makes provision for compensation not exceeding 300 weeks for partial total disability on the basis of 65 per cent. of the difference between wages earned at the time of the injury and those which the employee is able to earn thereafter, is plainly inapplicable here for the obvious reason that plaintiff's present wages are commensurate with those he was receiving at the time of the accident. On the other hand, it is equally clear that plaintiff is entitled to recover under the specific disability provisions of the statute.
Paragraph (d) of subsection (1) of Section 8 grants compensation for loss of specific members of the body such as hands, arms, legs, etc. And subparagraph 14 of this paragraph reads: "A permanent total loss of the use of a member is equivalent to the amputation of the member." The following subparagraph 15 states "In all cases involving a permanent partial loss of the use of function of the member mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such member as the disability to such member bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member."
[4] The medical evidence in the case reveals that plaintiff has suffered a partial loss of the use of function of his left arm. Dr. O'Ferrall states that the loss amounts *Page 317 
to 50% and Dr. Simon estimates it to be 25%. Both physicians are eminent in the field of orthopedics and we have no way of determining which one of the estimates is correct. By giving as much credence as possible to the opinions of both doctors, we think that it is fair to conclude that plaintiff has suffered a permanent partial loss of the use of function of his left arm to the extent of 37 1/2%.
[5] The fixing of compensation to which plaintiff is entitled under sub-paragraph 15 of paragraph (d) of subsection (1) of Section 8 of the Employers' Liability Act would be an easy matter except for the fact that plaintiff was earning approximately $50 per week at the time of his injury. We say this for the reason that sub-paragraph 15 declares that the compensation payable for a permanent partial loss of the use of function of a member shall bear such proportion to the amounts named in sub-paragraphs 1 to 10 inclusive for the total loss of a member as the disability to such member bears to its total loss. In sub-paragraph 6, it is provided that the compensation payable for the loss of an arm is 65 per centum of wages during 200 weeks. Therefore, the amount payable for a 37 1/2% permanent partial loss of use of function of an arm under sub-paragraph 15 would be 37 1/2% of 65% of the wages of the employee. Since the weekly wages in this case were approximately $50 per week, 65% thereof would be $32.50 per week and 37 1/2% of that amount would be $12.19. See Joseph v. Higgins Lumber Co., 12 La. App. 600, 126 So. 255, and other cases. However, since the compensation which would have been payable to plaintiff under sub-paragraphs 6 and 14, for a total loss of his arm or total loss of use thereof, would have been $20 per week, or the maximum compensation permitted by the Act, despite the fact that 65% of his wages greatly exceeded that amount, it may be suggested that compensation payable under sub-paragraph 15 should be computed by giving plaintiff 37 1/2% of the maximum compensation of $20. In fact, in the case of Fulmer v. McDade Gin Co., 142 So. 733, the Court of Appeal for the Second Circuit appears to have reached this result without giving consideration to the fact that the injured employee was earning $225 per month, or a sum approximating $50 per week. In that matter, the District Judge, finding that the plaintiff had suffered a permanent partial loss of use of function of his right hand to the extent of 50%, awarded him compensation for 75 weeks at $20 per week. The Court of Appeal amended the judgment by awarding him $10 per week, or one-half of the maximum compensation, for a period of 150 weeks which is payable for the loss of a hand. Evidently, therefore, that opinion might be pointed to as authority for an argument here that plaintiff's compensation should be computed on a basis of 37 1/2% of $20 per week for a period of 200 weeks.
In justice to our brethren of the Second Circuit, it should be observed that a reading of the decision in the Fulmer case shows that the court apparently did not consider the fact that the plaintiff was earning a weekly wage of approximately $50 and we believe that, if this fact had been brought to the Court's attention, it would have awarded plaintiff 50% of 65% of his wages for 150 weeks. Sub-paragraph 15, as above pointed out, declares that the compensation payable for permanent partial loss of use of function of a member shall bear such proportion "to the amounts named herein for the total loss of such member as the disability to such member bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member." This language clearly expresses the intention of the Legislature that the weekly wage of the employee shall be used as the primary basis in computing the compensation payable under sub-paragraph 15, irrespective of whether 65% of such wage exceeds the $20 maximum compensation payable for the total loss of the member or not. This is made manifest by the proviso contained in sub-paragraph 15 declaring "provided that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member." We therefore conclude that plaintiff is entitled to a judgment in compensation against the defendant insurer for $12.19 per week for a period of 200 weeks, subject to a credit of $120 heretofore paid to him on account.
Counsel for defendant raised the question in oral argument as to whether the defendant was entitled to a credit for the amount of wages earned by the plaintiff for the period after the accident during which he worked for his employers. This question must be answered in the negative. The compensation for specific disability, such as *Page 318 
loss of a member of partial loss of use of the function thereof, is granted as restitution to the employee for his loss and does not depend for its assessment on the employee's ability to work. Hence, the wage he earns subsequent to the accident cannot be offset as compensation paid on account. See Fulmer v. McDade Gin Co., supra.
For the reasons assigned, the judgment appealed from is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, John Falgoust, and against the defendant, Maryland Casualty Company, for compensation in the sum of $12.19 per week for a period of 200 weeks commencing July 5th 1943, with 5% interest on all overdue payments, subject to credit of $120 heretofore paid on account. Plaintiff is to pay all costs of this appeal, other costs to be borne by defendant.
Amended and affirmed.
WESTERFIELD, J., absent.
 On Rehearing.