HAWTHORNE, Justice.
 

 This case is before us for review of a judgment of the Court of Appeal affirming a decree of the district court which awarded to relator compensation at the rate of $20 a week for a period of 30 weeks, less the amount of compensation
 
 *605
 
 previously paid, under the provisions of Act 20 of 1914, Section 8, subsection 1, paragraphs (d)3 and (d) 11, as amended by Act No. 242 of 1928, pp. 357, 358, for the loss of the little finger and two phalanges of the ring finger on the left hand.
 

 Relator in his application for writs to this court urged, among other things, that the Court of Appeal erred in denying to him permanent total disability under the provisions of Section 8, Subsection 1, paragraph (b), of the act, and that the holding of that court was contrary to the holding of this court in Hughes v. Enloe, 214 La. 538, 38 So.2d 225, and Washington v. Independent Ice & Cold Storage Co., 211 La. 690, 30 So.2d 758. On the showing made by relator, a writ was granted, and pursuant thereto the entire record was lodged in this court. However, after reading all the testimony and considering the evidence adduced, we have come to the opinion that the judgment of the Court of Appeal is correct. See 38 So.2d 534.
 

 The nature and cause of the accident are fully set out in the opinion of the Court of Appeal, and it is not necessary to reiterate them here, especially since there is no dispute as to these facts.
 

 If the employee in the instant case due to the injury sustained is unable to perform work of the same or similiar character as that which he was accustomed to perform, he is entitled to payments for permanent total disability under the provisions of Section 8, Subsection 1, paragraph (b), of our compensation law, under the well established jurisprudence of this court. See Washington v. Independent Ice & Cold Storage Co., and Hughes v. Enloe, both cited supra, and authorities therein cited.
 

 In the Washington case this court pointed out that the Legislature by the adoption of the Workmen’s Compensation Act intended to provide that an employee should be paid compensation for an injury (whether temporary total, permanent total, or partial disability) suffered in the course of his employment during the period of disability under the provisions of Section 8, Subsection 1, paragraphs (a), (b), and (c); that under the provisions of paragraph (d) of the same section, which deals with the loss of a hand, arm, etc., compensation is to be paid irrespective of the duration of the disability; that it was the intention of the Legislature not to have paragraph (d) supersede and take precedence over the disability sections, but rather to supplement them; that the main object of the Legislature was to provide an employee whose wages are discontinued as a result of an injury sustained while serving his master with funds to subsist on until he can return to work; that, although this was the main object or purpose of the act, there was another object — that is, that there might arise specific injuries, such as. severance or am
 
 *607
 
 putation of members or disfigurement, etc.,
 
 without
 
 disability, and the employee, who has been deprived by the statute of the right to recover in tort, should have the right to compensation in such cases, and hence the provision of the act under paragraph (d), where disability is not mentioned. In the course of the opinion in that case this court quoted with approval from the case of Wilson v. Union Indemnity Co., La.App., 150 So. 309, 312, wherein it was said: “It has been held many times that subsections (a), (b), and (c) cover all cases of injuries affecting earnings, while subsection (d) has been applied regardless of earnings. * * * In short, subsection (d) is. not strictly compensatory, but is in the nature of a tort remedy for a personal injury not affecting earning capacity or ability to work.”
 

 We shall now review the salient facts of the case at bar and apply to them these well settled principles of law.
 

 At the time relator was injured, he was employed by the defendant corporation as a general utility man and swamper in its logging operations. In the course of his work he used an ax, worked on the loader, drove mules, and, as he himself expressed it, “did first one job and another”. On the day he was injured, he was hooking tongs in a log being moved by a caterpillar tractor. Upon recovering from his injury, he returned to his job and worked there for a period of three days, and shortly thereafter he was discharged. During these three days he did the same kind of work as he had performed before the injury, except that he did not use tongs for the purpose of moving logs, and was not required to do so. His rate of pay at the time of his injury as well as at the time of his discharge was 55^ per hour for 10 hours, six days per week. He was paid time and one-half for all hours worked over 40 hours each week. Some time after his discharge he was employed by Mr. Melton Wright, who was also engaged in the logging business, and remained in his employ up to the time the case was tried in the lower court, a period of about seven and one-half months, except for a short interval in which his employer was not engaged in logging operations. In the course of this employment he also drove teams, was required to use an ax, assisted in the loading of logs by means of grabs, and did swamper’s work, all as he had done prior to his injury. For this work he was paid $5.50 per day for eight or nine hours’ work, four or five days per week, with the usual overtime pay.
 

 The relator’s rate of pay, that is, $5.50 per day, was the same after the injury as it had been before. However, he was' required to work 10 hours per day before the injury and only eight or nine hourá' since that time. Although he worked only four or five days per week for Mr.Wright instead of six days as he had for' defendant, that was because of the re
 
 *609
 
 quirements of his new employer or weather conditions, etc., and not because of his injury.
 

 Mr. Wright, relator’s present employer, testified that he had seen and observed relator at work, and there is nothing in his testimony to indicate that relator’s work was unsatisfactory,
 
 nor is
 
 there any evidence in the record that relator was refused employment as a common laborer because of his injury.
 

 From all these facts we conclude that the Court of Appeal was correct in finding that relator’s work was that of a common laborer, and we also agree that the work which he has performed since the injury is work of the same or similar character as that which he was accustomed to perform or which he did perform prior to the injury. Under this conclusion he is not entitled to compensation for permanent total disability.
 

 In our opinion, however, relator is entitled to compensation for the loss of his little finger and two phalanges of his ring finger, as provided in paragraphs (d)3 and (d) 11, and the judgment of the Court of Appeal affirming the judgment awarding him compensation under these provisions is correct. See Washington v. Independent Ice & Cold Storage Co., supra.
 

 Relator contends that he is entitled to compensation for permanent total disability due to his inability to use tongs in hooking logs because of the loss of grip resulting from his injury and because of the prior loss of the first phalanx of the index finger of his right hand, and he makes the same contention with reference to his use of an ax. It is true that he testified that he was unable to use tpngs due to their weight, but the fact remains that since his injury he is performing work of the same kind and character as he did prior thereto, and, so far as the record is concerned on which this court must decide the issues, he has never since his injury attempted, had an opportunity, or been required to use tongs in his work, and, further, the record discloses in the testimony of both his former and his present employers that he was able to use an ax in a satisfactory manner.
 

 Counsel for relator stresses the fact that relator worked for the defendant corporation only three days after returning to the job and was then discharged, contending that this is, at least, an indication that the employer considered the employee no longer able to perform the duties of his job satisfactorily. The testimony in the record does not support counsel in this contention. The evidence adduced satisfies us that relator was discharged only because he failed to report on the job for a period of a week, and not because of any handicap resulting from the injuries which he had sustained.
 

 In this court counsel cites cases where compensation has been awarded for injuries producing partial disability to do
 
 *611
 
 work of any reasonable character, under paragraph (c), Subsection 1, Section 8 of the compensation act, under which compensation is fixed at 65 per cent of the difference between the wages at the time of the injury and the wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond 300 weeks. These cases do not support counsel in his position that relator is entitled to partial disability benefits.
 

 To our minds, this case is very similar to the case of Falgoust v. Maryland Casualty Co., decided by the Court of Appeal for the Parish of Orleans, La.App., 22 So. 2d 312, 315. In that case plaintiff, a carpenter, brought suit for compensation as a result of an injury to< his left arm. After his injury he secured other employment as a carpenter and earned the same wages as he had received prior to the injury. He had no difficulty in using the tools of his trade, but there was some doubt that he could safely climb ladders and scaffolds or do> any work which required the constant use of, and strain upon, his injured left arm — all being duties required of a journeyman carpenter. The Court of Appeal in denying him compensation for permanent disability stated: “ * * * Can it be said that plaintiff is not doing work of the same or similar character merely because he and his foreman expressed doubt that he can perform all of the duties required of a journeyman carpenter when he is actually doing the work required of him as a carpenter in his present employment to the satisfaction of his employer? We think not.”
 

 In the cited case the court found that plaintiff had suffered a permanent partial loss of the function of his left arm to the extent of 37% per cent, and accordingly awarded him compensation for 37% per cent of 65 per cent of his weekly wages for a period of 200 weeks, or 37% per cent of what he would have been entitled to under paragraph (d)6 for the loss of an arm.
 

 In the instant case the Court of Appeal was of the opinion that there was no evidence on which a judgment of partial disability could be based. With this we fully agree.
 

 In the course of its opinion the Court of Appeal used the following expression : “ * * * after all it is simply whether plaintiff can do1 the same kind of work in his present condition, or work which is reasonably of the same kind and character, as he did before.” [38 So.2d 535.] Counsel for relator contends that this language has the effect of changing the established jurisprudence of this state by adding the word “reasonably” before the word “similar”. We are not impressed with this contention, for the Court of Appeal in using the quoted language was paraphrasing the language of the statute, “for injury producing permanent total dis
 
 *613
 
 ability to do work of any reasonable character”. This provision has been interpreted to mean “work of the same or similar description [to] that [which] he is accustomed to perform”. Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 410; 141 So. 9, 12; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 1115, 179 So. 6.
 

 For the reasons assigned, the judgment of the Court of Appeal is affirmed; all costs to be paid by respondent.
 

 LE BLANC, J., recused.