GLADNEY, Judge.
Plaintiff, R. L. Jones, Jr., -brought this action .for benefits alleged to arise under the Workmen’s Compensation Act against William T. Berry and Mercer Scott, doing business in the name of Scott Motor Company, and their compensation insurer, the Fidelity and Casualty Company. His demands were rejected by the trial court and it is from this judgment that he appeals.
■Appellant was injured on October 14, 1949, when, while employed as a journeyman carpenter he fell through a hole in the roof of a building, falling a distance of fifteen feet (15') upon a concrete floor. It is alleged that he “suffered a permanent and total disability from the 14th day of October, 1949, or a period of twenty-six weeks”, and afterwards he “has suffered and is suffering a permanent partial disability” which will continue for a period of at least three hundred (300) weeks from the date of his injury. He claims entitlement to compensation of sixty-five per cent (65%) of his weekly wages of $72.00 per week, or the sum of $46.81 per week for a period of twenty-six • (26) weeks, from the 14th day of October, 1949, and the further sum of $30.00 per week for a period of 274 weeks. By supplemental petition plaintiff set out in detail his injuries and amended his pleadings to claim $300.00 for medical expenses.
. Upon receiving injury appellant was placed in the Natchitoches Hospital under the care o-f his personal physician, Dr. W. H. Pierson, and remained in the hospital until October 23, 1949. Thereafter, he was incapacitated to perform any work until about” April 25, 1950, and compensation payments were made at the rate of $30.00 per week to May 5, 1950. On or about April 25, 1950, appellant obtained construction work with Noah McGraw, and has continued to work for McGraw continuously, receiving the same rate of pay as that of a journeyman carpenter. His wages at the time of trial were equivalent to those received prior to his injury.
Suit was instituted on September 28, 1950, and evidence adduced between January 12, 1951 and March 13, 1951.
At the time of trial Jones complained that the accident of October 14, .1949, caused injuries which affected his hearing, caused him to have headaches and constant dizziness, an unbalanced carriage, and weakness and pain in the back.
To establish his disability medical evidence was given by the following doctors: Dr. W. H. Pierson, of Nachitoches, Louisiana; Dr. H. Richard Kahle of New Orleans, who examined plaintiff on October 31, 1949; Drs. Meyer D. Teitlebaum and H. H. Carr, both of New Orleans, who were visited by plaintiff for examination on April 11, 1950; and Dr. Carson R. Reed of Shreveport, who examined appellant on two occasions, January 10, 1950 and February 13, 1951. An examination was also made by Dr. Gene D. Caldwell of Shreveport, on June 15, 1950.
Appellant’s injuries to his head, shoulder and back were described by Dr. W. H. Pier-son, who enumerated his findings to the effect his patient upon admission to the hospital was bleeding from the .right ear, had contusions and lacerations on the right side of his head, and after regaining, full *872 consciousness began to complain of a back injury. The doctor testified X-rays of the ■skull were negative but he .inferred from the bleeding there definitely was a fracture in the region of the right ear. He was of the opinion the injury to the head would always give him trouble and might eventually cause epileptic seizures. He stated appellant also has a one hundred per cent disability or inability to perform the duties of his former occupation, and that such condition will not improve. His conclusion as to the one hundred per cent disability was reached, he admitted, on the day of the injury. During the course of the trial defendant offered and filed in evidence a report purportedly signed by Dr. Pierson, dated June 13, 1950, which reports a finding that the accident to R. L. Jones has not resulted in permanent disability, and that he would be able to return to work on April 11, 1950. Accompanying this report there appears the doctor’s bill for $350.00, which bears the same date as the report. Dr. Pierson not only denied that he signed the physician’s final report, but disavowed its correctness. His explanation was that the writing appeared to be that of a former employee.
On October 31, 1950, seventeen days after the accident, appellant was examined by Dr. H. Richard Kahle of New Orleans, an eminent surgeon and neurologist, who noted complaints of headaches, dizziness and deafness in the right ear. He found the tympanic membrane of the right ear torn, causing a temporary deafness, and he concluded that unless there was some nerve injury, then not determined, hearing would be restored. He also was of the opinion plaintiff suffered a fracture of the base of the skull on the right side, but as the fracture occurred at a place where no nerves were involved or present, it would cause no damage. In consideration of the short interval between the examination and the accident, Dr. Kahle concluded that the patient had made a progressive recovery and he anticipated no residual disability.
Dr. C. R. Reed, orthopedic surgeon of Shreveport, Louisiana, at the instance of Dr. Pierson, examined plaintiff on January 10, 1950. The testimony of Dr. Reed was not taken upon the trial. His report of the physical examination on January 10th is incorporated in the evidence, as is the second examination made by the same doctor on February 13, 1951. The complaint made to Dr. Reed by Jones on January 10, 1950 was that he had “poor use” of his lower back, and “poor control” of the back when walking on rough ground. The doctor recorded a diagnosis of spina bifida occulta of the fifth lumbar vertebrae and osteo arthritis. ' Spina bifida occulta is simply a congenital or development defect. Dr. Reed stated that it does not cause pain. He advised that the arthritis may or may not be the cause of the pain complained of. His conclusion was that the patient should be allowed six months from the date of injury for recovery and he estimated the disability of the back at ten per cent (10%) at the end of that time. After the evidence had been adduced in this suit on January 12, 1951, appellant presented himself to Dr. Reed for another examination, this time on February 13, 1951. It appeared that the purpose of this examination was for securing evidence to be presented in the case. The report of this examination" is comparable to that of the previous report and concludes with the following statement: “For the purpose of settlement, this patient might be allowed fifteen or twenty per cent permanent partial disability. It is thought that he can return to his former occupation.” No explanation is offered by plaintiff as to why the testimony of Dr. Reed was not taken.
Dr. Pierson sent Jones back to Dr. Kahle for an examination, but without himself making another examination, Dr. Kahle, on April 11, 1950, referred Jones to Dr. Howard H. Carr, who specializes in neurology. In connection with this examination X-rays of the lumbosacral region were made and studied by Dr. Meyer D. Teitelbaúm, who testified there were no significant findings although certain defects were indicated which were purely of a congenital or development nature. He observed no evidence of recent injury to the back.
The complaints made to Dr. Carr were loss of balance and momentary blindness *873 or blackouts. Appellant informed the doctor that he had no serious pain or “anything- of that kind” in his back, but it was sore and useless. Jones further complained that when he stood on his feet for any period of time the back tired arid throbbed. At the conclusion of a complete physical and neurological examination Dr. Carr’s finding disclosed no abnormalities, that the patient had no residual disability and that he was physically qualified to resume his usual occupation. Dr. Carr found plaintiff’s hearing was normal and observed no indication of nerve injury. The skull examination was normal and motor examination was normal. At the time of the examination it was recorded that appellant appeared to be alert and in full possession of his mental and physical faculties.
Dr. Caldwell’s examination consisted of clinical and X-ray studies of the back and lower extremities. On that occasion plaintiff complained of his lower back in that it woud get stiff and sore and was aggravated by prolonged walking. Jones advised the doctor his back pain did not radiate into either leg and he felt no sensation of numbness. Dr. Caldwell stated Jones gave no complaints referable to his head, neck or shoulders, or anything except his back and legs. His conclusion was that there was no positive objective evidence of an injury. He did note an X-ray finding of a congenital abnormality of the fifth lumbar vertebra. He said this was caused in the process of ossification, and resulted from a failure of cartilage to fuse in the back portion of the fifth lumbar vertebra, leav- " ing a small defect. He asserted there were no objective findings of any muscle spasm or weakness in posture that would indicate disability at the time of the examination. His conclusion was that insofar as the back and lower extremities were concerned, Jones was able to resume his occupation as a carpenter.
In order to establish his case, plaintiff produced nine lay witnesses who, in principle, testified as to the ability of plaintiff to perform the duties of a journeyman carpenter following his injury. The first two. of these witnesses, Peck Powell and L. B. Kimball, testified concerning the manner in which Jones fell from the roof on October 14, 1949. Noah E. McGraw, employer of plaintiff at the time of trial, testified to the effect that plaintiff was not the man he formerly was. He admitted that plaintiff had been employed by him and paid the wages of a carpenter, $1.50 per hour, since the 24th or 25th of $Lpril, 1950. The worker was carried in his compensation policy with the classification of carpenter. He indicated that he employed plaintiff by reason of long friendship and that lighter duties were assigned to him than are usually performed by the ordinary carpenter. C. A. Robbins testified that his observance of Jones was at odd intervals and that he could not perform the duties of a journeyman carpenter as well as before his injury. To the same effect is .the testimony of Thomas E. Scott. Alvin Prothro gave as his testimony that he did not believe plaintiff was able to do carpentry work as well as before, and that he has not seen him do any work as a carpenter. C. R. Wyatt, in substance, says plaintiff could not do carpentry work like he did before the accident. Frank Young-blood testified that to his knowledge plaintiff had done no carpentry work.
In rebuttal, the defense placed on the stand William Berry and Austin Blankenship for the purpose.of showing that plaintiff has actually performed many of the duties of a journeyman carpenter since his employment with McGraw. The activities these witnesses observed plaintiff performing included sawing, stretching lines, putting on roofing, laying tile, and working on kitchen cabinets. In addition to this testimony plaintiff himself admitted performing a number of other duties within the vocation of carpentry.-
Other testimony produced was that of plaintiff’s wife, who in response to leading questions answered that plaintiff had sleepless nights, headaches and nervousness. An examination of her testimony indicates nothing of an extreme nature. It is considerably weakened by the leading nature of the questions asked, which, no doubt, affected the answer given in many instances. The effect of leading questions on direct examination was also1 noticeable *874 in the testimony of the lay witnesses produced by plaintiff. We cannot fail to note that many of these witnesses on cross-examination substantially qualified answers given on direct examination in response to leading questions.
Plaintiff’s testimony as to performance of his duties as a carpenter in reality amounts to a denial that he can do some of the heavy work required. His steady employment since April 24, 1950, some ten or eleven months prior to the commencement of trial, and his admission that he has performed a substantial number of the functions required of a carpenter, is persuasive that he has been and now is able to substantially perform the duties of a journeyman carpenter. The evidence does not indicate that his work is accompanied by pain or that his employment is in the nature of a gratuity.
In Weber v. Kieckhefer Container Company, La.App., 45 So.2d 562, the question, as here, of the ability of the worker to do work of a reasonable character was involved, and the court there defined the pertinent provision of the Workmen’s Compensation Act to mean that class of work for which the claimánt is fitted by education, training and status, and such as he was performing or was accustomed to perform before the occurrence of his injury.
It seems to us that the ruling in the case of Falgoust v. Maryland Casualty Company, La.App., 22 So.2d 312, is appropriate to the question here under consideration. There, a carpenter in a compensable accident suffered fracture of his left el'bow, which prevented him from climbing ladders and scaffolds and from doing heavy work a journeyman carpenter ordinarily does, but which did not prevent him from using his tools, and within three months he received other employment as a carpenter at identical wages. The Court held that he was not entitled to recover compensation for permanent total disability on the ground that he was unable to do work of the same, or similar character for which he was fitted by education and previous experience. There, page 315 of 22 So.2d, the Court answered the same question confronting us: “Can it he said that plaintiff is not doing work of the-same or similar character merely because he and his foreman express doubt that he can perform all of the duties required of a journeyman carpenter when he is actually doing the work required of him as a carpenter in his present employment to the satisfaction of his employer? We think not.”
A similar holding was reached by the Court in Scott v. Hillyer, Deutsch, Edwards, Inc., 217 La. 596, 46 So.2d 914, wherein the Court quoted with approval the case just cited.
After reviewing the lay testimony offered to show an inability by appellant to perform his work as well after the injury as prior thereto, we have arrived at the conclusion that the evidence does not indicate Jones’ employment activities cause him to endure pain or that his earnings are in fact a gratuity. On the contrary, we are persuaded claimant can now follow his occupation as carpenter substantially as well as formerly and without undue discomfort. It is also our opinion that a preponderance of the medical evidence supports a finding that Jones is able to normally resume his occupation.
In the Lower Court defendants urged an exception of no cause or right or action that was overruled. The exception has not been urged in this Court and we shall consider it as abandoned.
We observe that appellant claimed compensation for a weekly sum in excess of the statutory maximum. -.Such excess, of ‘course, cannot he validly claimed. LSA-R.S. 23:1202. Claimed also was the sum of Three Hundred ($300.00) Dollars for medical expenses in addition to the amount which defendants had already paid. The record discloses this sum is likewise in excess of the Five Hundred ($500.00) Dollars allowed by the statute as the insurer has already expended more than Five Hundred ($500.00) Dollars on account of appellant’s medical expenses.
For the foregoing reasons the judgment appealed from is hereby affirmed at appellant’s cost.
KENNON, J., not participating.