ELLIS, Judge.
This is a suit by Delton D. Cobb under the Workmen’s Compensation Law against A. G. McKee & Co., employer and the General Accident Fire and Life Assurance Corporation, Ltd., the employer’s insurer, for permanent and total disability as the result of an accident and injury to an interverte-bral disc in his back, necessitating the removal of a small portion thereof. Plaintiff, in -addition to the necessary allegations of employment and duties as a structural steel worker, the accident, injury, the operation and removal of a small portion of the ruptured intervertebral disc, and his continued total and permanent disability despite the operation, alleged that he was due and prayed for compensation at the rate of $20.00 per week from April, 28th, 1948 to July 28th, 1948, the effective date of Act No. 175 of 1948, and thereafter under the provisions of said Act, at the rate of $30.00 per week for a period not exceeding 400 weeks, subject to a credit of compensation paid to December 14, 1948 at the rate of $20.00 per> week.
The defendants in their answer denied the happening of the accident although they admit that one was reported by plaintiff and that he was treated by several physicians and finally underwent an operation for the removal of the ruptured disc on September 9th, 1948. They deny that he was suffering pain as alleged or that he was unable to do the same kind of work he was doing before the accident or that he was entitled to be paid any additional compensation, and further denies any liability for the medical expenses claimed, alleging that they have paid or agreed to pay medical expenses in a substantial sum. They deny all -other material allegations of plaintiff’s petition and, in the alternative, allege that plaintiff's compen-sable rate under no circumstances should exceed $20.00 per week as that was the maximum compensable rate prescribed by the law in force and effect at the time of the alleged accident and at the time the said insurance policy was written. They further alleged in the alternative that if the. aforesaid Act was intended to have a retrospective effect it is violative of the Constitution of- Louisiana and of the Fifth -and Fourteenth Amendments to the Constitution of the United States in that it would deprive defendants of their property without due process of law and would deny them the equal protection of the law.
The case was duly tried and judgment was rendered in favor of the plaintiff awarding him compensation at t-he-rate of $20.00 per week from the date of the accident, April 28, 1948, against the defendants in solido during plaintiff’s disability, not exceeding 400 weeks, with legal interest on all past-due installments from due date until paid, less the amount paid from the date of the accident to December 14, 1948. Defendants have appealed to this Court.
Counsel for the defendants concedes in his brief that the plaintiff suffered a ruptured intervertebral disc during the course of bis employment and submits that the only questions presently before the Court are these:
1. Has the plaintiff fully recovered ?
2. If the plaintiff has not fully recovered, is he presently totally and permanently disabled within the meaning of the Act?
3. If the plaintiff is still disabled, is 'he entitled to an increased compensation rate from $20.00 to $30.00 per week from the effective date of Act No. 175 of 1948?
The third question which the Lower Court, in a well-written opinion, decided against the plaintiff and in favor of the defendants is no longer at issue as counsel for the plaintiff in his brief admits that the Dis *434 trict Judge was correct in his analysis and interpretation of the law concerning the effects of Act No. 175 of 1948 and now concedes that since the appellee was injured prior to the effective date of Act No. 175 of 1948 that he is bound by the provisions of law as existed at the time of his injury and hence entitled only to compensation at the rate of $20.00 per week and, accordingly, asks that the judgment of the Lower Court be affirmed.
The plaintiff was a structural steel worker which required the “setting of steel, driving'steel, driving of rivets, plumbing of the steel, placing steel floors, plates and gratings and the general construction of the whole building, everything that pertains to iron”, and also to climb as most of the duties of a steel worker are above the ground as their main duties are performed in the construction of industrial plánts and the like. On April 28, 1948, the date that the plaintiff was injured, he was assisting in assembling steel floor plates on what he termed “the catwalks between the reactors.” It is shown that these steel plates weighed maximum around 600 pounds and minimum 200 to 250 pounds.
After approximately six weeks treatment plaintiff continued to suffer and was sent by Dr. Godfrey of Baton Rouge, Louisiana, to Dr. Howard H. Karr of New Orleans, Louisiana, who, as a result of a myelograph test, definitely diagnosed the plaintiff’s trouble as a ruptured disc in the lower part of his back, and recommended an operation as the only means of relieving his condition. The plaintiff made his own arrangements with Dr. Karr to perform the operation, which he did on September 9th, 1948, at Touro Infirmary in New Orleans. On September 14th the plaintiff returned to his home in Baton Rouge and after two months returned to Dr. Karr for a check up. As a result of this check up he stated Dr. Karr told him to do light work and that as he had some friends who were working for Stone and Webster, they found him an easy job “flagging a- rig, crane, giving signals. That is all I do, with my hands,” which job he was still holding at the time of the trial of this case on May 19, 1949.
Plaintiff testified that after -the operation he seemed to get some better and then his back began to hurt him in practically the same place so that he was unable to do any hard work, and it also interfered with his rest at night for during this time he would get a “charley horse in my legs, the muscles get so hard my wife has to rub them with alcorub to get them out.” Also, that he had requested the foreman to allow him to try to see if he could do heavy work in assisting to unload a car load of iron while some one else flagged the crane, and his back pained him to such an extent that he could not do the work. As a result of his continued suffering he again went to Dr. Godfrey who told him that after the disc was removed his back would never be the same and that there was nothing further to be done about it, but he did send him to Dr. Toups of Baton Rouge.
Plaintiff’s testimony is corroborated by hi^ wife, a fellow worker at the time of the accident, plaintiff’s friend and foreman at Stone & Webster who had given him the flagging job after the operation and who stated that the plaintiff was unable to do anything else “but flag the crane,” as he had "tried him out — at his request” and that, further, the plaintiff’s complaints of pain had increased from the time he had gone to work for the company.
On the first question, as to whether the plaintiff has fully recovered, the medical testimony is in irreconcilable conflict. Dr. Karr, who is a neurosurgeon and admittedly one of the best, stated that he removed a portion of the intervertebral disc which was approximately of an inch in diameter or seven millimeters, and that a normal disc measures approximately fifty-five by thirty-two millimeters; and that the portion of the disc which was removed was “simply the protruded portion of the disc and -not the rim-of the disc or the supporting element of the disc,” and that the operation was successful in that plaintiff made a quick recovery,. and that when he was discharged from the hospital there was a total absence of any symptoms of plaintiff’s previous troubles. Dr. Karr saw the plaintiff again on November 9th, 1948 and in his report *435 stated that on this date “from an objective point of view the patient had shown remarkable recovery and from a subjective point of view was asymptomatic.”
Dr. Karr again saw the’ plaintiff on December 14, 1948, at his office at which time he stated plaintiff told him he had returned to work about one week prior to his visit and “found himself able to do eight hours of work except for some low back discomfort on arriving at home after the performance of the day’s work.” He further stated that “Objectively, he had no muscle spasm. He had increased capacity to bend forward at that time, being able to reach within six to eight inches from the floor, and that there was still some flattening of the lumbar curve on forward bending.” Also, “that as a result of the operation which was carried out on September 9th there was marked subjective relief, and marked objective improvement. I felt' at that time, that his physical findings were of a character to qualify him for full performance of work.”
Dr. Karr again examined the plaintiff on April 24, 1949, and at that time the plaintiff told him that he had been having intermittent episodes of what he referred to as “Charley horses” in the left calf during the night and which were characterized by a cramping sensation and that they had begun approximately several weeks prior to plaintiff’s visit, and as a result of his examination on this date all of his findings which he described in medical terms, were normal and that he concluded at that time "that the patient was in excellent condition insofar as the condition for which he was operated upon was concerned. I concluded that he had made an excellent recovery from the operation, and that he was now qualified for performance of his usual work.”
Thus, we see that it was definitely Dr. Karr’s opinion that the plaintiff had no disability as a result of his injury or the operation and could have resumed his former duties as a structural steel iron worker.
On the other hand, we have the testimony of Dr. James R. Godfrey who testified that he had examined the plaintiff twice, first on June 24, 1948 at which time he diagnosed his trouble as a ruptured intervertebral disc and recommended that he go to Dr. Karr for surgical treatment. The second examination was subsequent to the operation, at which time the plaintiff told him that he had never gone back to his previous heavy job but had been doing light work, and further stated “that the pain at that time was much better than it had been before the operation” but that “he had a steady soreness and aching in the site of the operation much of the time and that lifting heavy objects caused the back soreness to become severe.” Dr. Godfrey stated that he also told him that “he had attempted to lift heavy objects several times deliberately, trying to see what it did to the back, and the pain immediately became severe and persisted for perhaps a day after the episode.” Dr. Godfrey’s examination at this time was negative as to the lower extremities, and plaintiff had a good range of back motion with a six inch scar along the lower portion of his lumbar region, extending upward from the top of the sacrum, and it was'in the lower portion of this scar in the region of the lumbo-sacral joint of which he complained of his almost constant aching that was made so much worse by heavy lifting. As a result of this visit and examination, Dr. Godfrey decided “that Mr. Cobb had had an intervertebral disc or a section of a disc removed and that the operation had been quite successful, had given him quite satisfactory improvement, and that he was now capable of doing work that did not require too heavy straining on the region from which the segment of disc had been removed.”
Dr. Godfrey saw the plaintiff twice after that and had talked with him on the phone several times and at these times the plaintiff had complained of considerable pain in his lower left extremity and that one time he had sent him to Dr. Toups to see if hé might know of something that might be of some assistance to the plaintiff. It was Dr. Godfrey’s opinion that “the neuritis and the discomfort Mr. Cobb has down his left lower extremity with charley horses and the areas of anaesthesia are going to disappear in time. I think they are due to neuritis and I think in time they will disappear. The labor or activity part of his back is completely a matter of degree. Mr. Cobb may some day reach the point where he can’ do *436 fairly heavy laboring work, but I don’t think Mr. Cobb will ever be able to do as heavy laboring work as he 'was capable of doing before the back was originally injured., because an important part of the back is not there.” (Emphasis added.)
Dr. Toups was of the opinion that even though the disc had been removed the plaintiff still had pain due to pressure that was against the nerve when the disc was present in the back, out of location, and that this pressure brought about a neuritis which still existed, so that in his opinion the only treatment to relieve this pain would be the administration of narcotics. It was further his opinion that heavy lifting would tend to make this pain more acute.
The trial judge, while taking cognizance of the conflict in the medical testimony in deciding whether the plaintiff had fully recovered, had this to say:
“Regardless of which of these physicians is correct, Mr. Cobb has convinced me that he does suffer intense pain at times. His testimony is corroborated by his wife.”
“The fact that h'e is able to do light work and is still classified as an iron worker does not necessarily mean that he has recovered or that he can do the kind of work he was doing before he was injured. Indeed, I am convinced that he made an honest effort to do heavy work since the accident and failed to successfully do the same without pain and discomfort.”
“In these circumstances, I am of the opinion that he is in a legal sense totally and permanently disabled to do the work to which he was accustomed before the accident and therefore entitled to recover.”
“Butzman v. Delta Shipbuilding Co., Inc., et al., [La.App.], 21 So.2d p. 80; Vega v. Higgins Industries, Inc., et al., [La.App.], 23 So.2d 661; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. p. 6.”
While we realize that Dr. Karr is a specialist and a distinguished expert in neurosurgery and his opinion is entitled to greater weight, all things being equal, than one who is not a specialist in this particular field, the trial judge who heard and saw all the witnesses on the.stand by virtue ,of the lay. testimony stated that he was convinced that the plaintiff did suffer intense pain and was in a legal sense totally and permanently disabled. We cannot say that there was any manifest error- in this conclusion.
Counsel for the'defendants contends that the cases relied upon by the trial judge are not applicable for in those cases, as well as the cases cited, the Courts applied the rule that when an employee is a skilled mechanic or trained and experienced in his special trade, and an inju'ry in the course of employment causes a total disability to continue carrying on his trade or work for which he alone is suited by training and experience and he is totally disabled to do any work of a similar character, disability is total notwithstanding the injured employee may have succeeded in obtaining, after the accident, employment of a different kind and not requiring any special skill or training, whereas in the present case the plaintiff is still employed and classified as a structural steel worker and doing work which a structural steel worker is required to do and drawing 25^ an hour more pay than on the date of the accident. Counsel asks: “What incentive is there for him to resume his regular duties in view of these circumstances,” and then states: “If the Court should affirm the -judgment in his favor then he can continue indefinitely as a structural steel worker drawing higher wages than he was drawing when injured and, in addition, drawing compensation at the maximum amount pefmitted by law,” and that if the judgment is affirmed “the plaintiff will be in effect receiving a bonus.” He submits that the plaintiff’s case can be likened to the cases of Warlord v. Arkansas Fuel Oil Co. et al., La.App.2d Cir. 1937, 176 So. 682, certiorari denied; Colbey v. Edwards Chevrolet Co. et al., La.App.2d Cir. 1938, 186 So. 884, certiorari denied, and Rendueles v. Solomon et al., La.App.Or. 1949, 39 So.2d 465.
It is true that plaintiff was still classified as a structural steel iron worker and that the flagging of the crane, that is, giving signals to the crane operator when to lift the steel and when to let it down, etc., was always done by a structural steel iron worker where the crane was being used in connection with their work just as a similar flag *437 ging of the crane was done by a boiler maker when it was engaged in work being done by boiler makers. It is equally true that plaintiff’s job, aside from being easy and the work very light, as compared to the other duties which a regular structural steel iron worker was required to do, was also ■not a permanent job and ordinarily the worker selected to flag the crane would, as soon as it was no longer necessary to operate the crane, be directed to any one of the other duties required of a structural steel worker. For instance, it may be necessary to hoist some steel for the construction of the building, and as soon as a sufficient amount was hoisted into place, the crane operation would cease, yet construction of the building would continue. Therefore, ordinarily the foreman would call one of the workers to flag this crane and when the crane had finished or was no longer needed, the worker would be directed back to placing steel plates or riveting or any one of the other various kind of work that a structural steel worker is called upon to do. Plaintiff testified that he had gotten this job through friends who were working for Stone and Webster, and it is shown by the testimony that at no time since his injury, the operation, or beginning of his work as a flagman of the crane had he ever been seen doing any other kind of work that has been described as part of the duties of a structural steel iron worker. Plaintiff testified that had he been called upon to do the other work he would have had to quit as he could not' lift anything heavy or do any part of the heavy work.
In addition to these facts, the foreman under whom plaintiff was working as a flagman, testified that he had known the plaintiff for about six or seven years and had had occasion to work with him before he was injured in structural steel work' and that although such a worker is called upon to drive rivets, hang iron, rig for raising heavy material such as tanks and drums, climb, and do anything that pertains to putr ting up a building or anything else that is made from iron, that the plaintiff was unable to perform these duties and that as he knew the plaintiff quite well and knew his condition he gave him this job so that he could make a living. He further testified that -there was no such thing as flagman, that is, a permanent flagman, and that he had created this particular job for him. It is true that he testified that at times he needed a flagman and “we need him (plaintiff) there but the times that this rig isn’t in use we need him other places,” but that he did not use him other places as he was unable to do any of the heavy work. He also testified that when the crane work was done they would not retain the plaintiff as a steel worker because he is not physically able to do the other work required of the regular structural steel iron worker.
Under these facts, we are of the opinion that the judge of the lower court was correct in his finding that in a legal sense the plaintiff is'totally and permanently disabled to do the work to which he was accustomed before the accident and, therefore, entitled to recover, and that the cases cited and relied upon by the Judge of the lower court are applicable, and that the cases which counsel for defendant submits as being controlling are not, under the facts in this case. Clearly, under the facts in this case, the plaintiff could not follow the line of work for which he was trained and which he was performing when injured, for prior to his injury he was an excellent structural steel1 iron worker and was able to perform all of the duties of such a worker, which consist almost completely of heavy, ardous labor, whereas, after the injury the only thing that he could do was to flag the crane which it might be said was a duty incidental to the main duties of a structural steel iron worker, and which was done spasmodically by any structural steel worker when it was necessary to hoist steel so that the construction work could continue. It was never in a sense considered a permanent job or one in itself, if that alone was done, which would qualify the person doing it as a structural steel iron worker or to be classified as such. The mere fact that he is earning more money by reason of the fact that a friendly foreman saw fit to create a job where none had existed before merely for the benefit of the plaintiff, and where he is disabled to do any of the other duties of a structural steel iron worker *438 would not, under the law and jurisprudence be sufficient to- deny him compensation. Although the plaintiff might be classified as a structural steel worker and draw pay accordingly, under the facts he is not in reality a structural steel iron worker for he was unable to do any of the permanent duties required of one and which he had performed prior to his injury.
Counsel for defendant in his brief alternatively contends that the plaintiff should recover as for partial disability and cites as his authority Vilce v. Travelers Insurance Co., La.App., 24 So.2d 485. We do not think this case is applicable for it is based upon the proposition that if the ability of an injured employee to do work similar to that which he was doing when injured is only impaired or reduced and he is able to do in a substantial manner his former work with only reduction in his earning capacity, then he is to be compensated under the partial disability clause. Sec. 8, Subsection 1 (c) of Act No. 20 of 1914, as amended, Act No. 242 of 1928, page 357. In the present case, the plaintiff is not able to do in a substantial and reasonable manner work similar to that which he was doing when injured. In fact, he is unable to perform the very work he was doing and was called upon to do at the time of and prior to his injury, and can now only perform the duties of a flagman of a crane, which it is not shown he ever did before and which is an incidental and temporary duty of a structural steel iron worker.
It is therefore ordered that the judgment of the District Court be affirmed.