ELLIS, Judge.
This is a suit arising out of an accident which occurred July 18, 1951, brought uh-der the Employers Liability Act by James Dean Wallace on behalf of his minor son, Richard E. Wallace, an employee of K-way Maintenance Company who became of age and was substituted as party-plaintiff, against Aetna Casualty an'd Surety Company, the employer’s compensation insurer.
The petition claims total and permanent disability and maximum compensation of $30 per week for a period of 400 weeks, subject to a credit for payments already made, and for legal interest on past due payments, maximum medical payments, penalties and attorney’s fees.
Payment of compensation was discontinued on September 15, 1952 when the plaintiff was discharged by the attending physician and suit was filed on November 12, 1952.
The case was duly tried and a decision handed down by the District Court awarding plaintiff compensation for permanent partial disability at the rate of $5.20 per week for a period not to exceed 239 weeks. (61 weeks of temporary total disability compensation were paid), plus $500 medical expenses, penalties on unpaid installments, and $350 as attorney’s fees.
The defendant acquiesced iti this judgment and made payments thereunder. The plaintiff has appealed, maintaining the trial court was in error in not having awarded judgment as prayed for.
Plaintiff, appellant, bases his motion to remand upon the fact that there was evidence in the record to the effect that plaintiff had been examined and found physically fit for induction into the Armed Services through Selective Service, but that subsequent to the trial of. this cause, when he was ordered to report for induction' he was found to be physically disabled and qualified for limited service only. The motion states *687 plaintiff has reason to believe that the evidence in the record showing plaintiff had been approved for induction was a material factor in the mind of the trial judge in causing him to render the judgment herein, and he believes in the interest of justice the case should be remanded for further evidence upon this point.
Remands are governed in this Court by Article 906 of the Code of Practice, which reads as follows:
“But if the court shall think it not possible to pronounce definitively on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refuse to receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law.”
The language which follows is found in McClung v. Delta Shipbuilding Co., Inc., La.App., 33 So.2d 438, 443:
“An appellate court should remand a cause whenever the nature and extent of the proceedings require it, and such action is largely within the court’s discretion, and should be exercised according to the peculiar exigencies of the particular case. This is especially true when such action is consonant with the ends of justice.”
There are numerous authorities cited in the McClung case, and there the cause was remanded for the reception of additional evidence upon plaintiff’s disability. Here, however, an examination of the record leads to the conclusion that this- case can be properly adjudicated upon the record as it is now constituted, and any additional evidence upon plaintiff’s disability as connected with his induction into the Armed Services would be merely cumulative and additional. See Blackburn v. Chenet, La.App., 42 So.2d 288.
The motion to remand is, therefore, denied.
There is no dispute as to plaintiff’s employment, the_ occurrence of the accident, the wage rate, the extent of the initial injuries, nor the fact that he was totally disabled for a period of 61 weeks. Neither is there a dispute that medical expenses in excess of the statutory maximum were incurred. Payments for temporary total disability were admittedly paid until plaintiff was discharged by his physician, September IS, 1952.
The real dispute is as to the extent of plaintiff’s residual disability and its effect upon his ability to work. This, of course, involves the question -as to whether the nature of the work plaintiff was performing was his usual occupation for which he was fitted by training and experience, and whether his work was skilled, semi-skilled, or unskilled in its nature.
The work in which plaintiff was engaged at the time of the -accident consisted of cleaning, scraping, buffing, and applying a priming coat of paint on steel tanks approximately 30 to 40 feet high. In performing these operations plaintiff had to use a pneumatic driven buffing machine, a scraper, and would then, of course, have to apply the prime coat of paint upon the cleaned steel.
Platform stages or scaffolding approximately 16 feet long and one and one-half feet wide were used to reach the parts of the tanks to be treated. These were supported by brackets fixed to ropes which ran in two sets of block and tackle attached to the top of the tanks to allow the necessary lowering -and raising of the platform. Plaintiff fell when this scaffolding gave way due to some failure of the attaching ropes, breaking his right femur, spraining his ankles, bruising his elbows and suffering lacerations on his chin, some chipped teeth and other miscellaneous injuries. The fractured femur healed satisfactorily but with some rotation of the lower fragment outward, which causes his right foot to rotate more towards the right and away from the *688 center of plaintiff’s body, some 25 to 30 degrees.
Because of this residual disability plaintiff now contends he is unable to do work of any reasonable character or that for which he is suited by training and experience, and that consequently, within the purview' of the Workmen’s ¡Compensation Laws he is totally and permanently disabled. He claims this disability renders him no longer “sure-footed” and that consequently he cannot determine exactly What his right foot and leg are doing by his sense of feeling alone and that the work which he was doing at the time of the accident required a nice sense of balance and that since he has lost these as a result of the injuries, he can no longer perform this type of work.
Plaintiff admitted the work in which he was engaged at the time of the injury, was temporary. He had been engaged about six weeks prior to his injury and planned to continue it only until the opening of Louisiana State University in September, a period of six or eight more weeks from, the date of the accident. When he finished high school he was employed as an ambulance driver’s assistant and had also been employed reading water meters. He had definitely had no training or experience in this type of work..
The medical testimony seems to be in complete agreement, Dr. Dowell estimated permanent partial disability at 20% which was based as against 100% use of the leg and not 20%, disability to perform work. This doctor also stated he would pass the plaintiff for industrial employment and that plaintiff could perform the same type of work that he had performed prior to the injury.
Dr. Sabatier also stated he would pass the plaintiff for industrial employment and that plaintiff in his opinion could return to the type of work he had been performing at the time of the accident. This physician estimated the residual disability as from 15% to 20% but he too pointed out he did not mean the plaintiff would be able only to do 15% less work, but that the percentage disability referred to the mechanical use of his leg as against a 100% normal leg.
Dr. Bannerman stated that a permanent partial disability existed of approximately 20%, this opinion being based by considering amputation of the leg at the hip as being 100%,. This doctor testified he saw no reason why plaintiff could not return to the work he was doing, but with regard to plaintiff’s ’complaint that his leg felt weak, he stated this was more of an “apprehension” than a physical handicap.
No medical testimony was offered by plaintiff. He testified himself and there was some lay testimony to the effect that he had been quite active and athletic prior to the accident but since that time he had been quite clumsy and unable fully to use his injured leg. The date and time of these observances were not fixed as to whether they occurred before or after plaintiff’s discharge from medical treatment. There was one other specific instance where plaintiff claimed he was unable to perform any work and was unable to roll some cement in a wheel barrow while working around his home. This occurrence was finally fixed as having happened before his discharge from medical attention. Other testimony indicates plaintiff has engaged in athletics on numerous occasions, and has in general returned to his normal pattern of physical activities.
At the time of the trial plaintiff was employed by the State Highway Department driving an automotive unit.
Plaintiff also stated he had made application for employment at the Kaiser Aluminum Plant, at the Y. & M. V. Railroad as a brakeman, and to the Chicago Bridge & Iron Company. The nature of these types of employment sought by plaintiff since his discharge from medical treatment indicates he believes he has achieved a recovery sufficient to allow him to pursue work of a reasonable character.
Plaintiff has suffered a permanent partial disability and is entitled therefore to the benefits • provided in LSA-R.S. 23:1221, Paragraph 3, which provides:
*689 “For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not beyond three hundred weeks.”
See Woodfin v. Paul, Rice & Levy, Inc., La.App., 52 So.2d 307; Id., La.App., 53 So. 2d 299, and Brannon v. Zurich General Accident & Liability Insurance Co., La.App., 61 So.2d 257.
Plaintiff has called to our attention among others, the following cases: Newsom v. Caldwell & McCann, La.App., 51 So.2d 393; Cobb v. A. G. McKee & Co., La. App., 45 So.2d 432; Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695.
The Newsom and Cobb cases, supra, both involve ironworkers. It was clearly shown the employees in these two cases were highly skilled and had many years experience. The medical testimony showed that neither could pursue his former duties. Thus they are distinguished from the present case and are not controlling.
In the Wright case, supra, the plaintiff was a skilled worker and it was shown that he could not continue to perform the same duties for which he was employed and the case is therefore not controlling.
Having concluded plaintiff is entitled to the benefits of LSA-R.S. 23:1221, Paragraph 3, it is necessary to determine the present earnings of the plaintiff. The evidence shows this amount to be $40 per week, while at the time of the injury he was earning $48 per week and 65% of this difference in weekly earnings amounts to $5.20 per week. Having received maximum compensation for 61 weeks, plaintiff is therefore entitled to compensation in the amount of $5.20 per week for a period not exceeding 239 weeks. The claim for $500, the maximum allowed for medical expenses, is borne out by the record and consequently allowed.
The claim for penalties and attorneys fees grounded upon defendant’s failure to make payments for a period of more than 60 days is well founded. This right is given under LSA-R.S. 22:658, and under the decision of Wright v. National Surety Corporation, supra, the 12% penalty applies only to the weekly payments due at the time of the suit, and all such payments as may become 60 days over due in the future.
The attorney’s fee of $350 allowed by the District Court as well as the fees of the medical experts are reasonable.
The judgment of the District Court is affirmed.