119 So.2d 550 (1960)
Lonnie T. WALTERS
v.
GENERAL ACCIDENT AND FIRE ASSURANCE CORPORATION, Ltd.
No. 4989.
Court of Appeal of Louisiana, First Circuit.
March 21, 1960.
Rehearing Denied April 25, 1960.
*551 Talley, Anthony & Hughes, Bogalusa, for plaintiff-appellant.
A. J. Jones, Bogalusa, for defendant-appellant.
*552 Before ELLIS, LOTTINGER, TATE, FRUGE and LANDRY, JJ.
LANDRY, Judge.
Plaintiff Lonnie T. Walters, a civil service employee of the City of Bogalusa, under the classification of "Fire Driver", instituted this action against defendant General Accident and Fire Assurance Corporation, Ltd. (compensation insurer of the City of Bogalusa), to recover Workmen's Compensation benefits for disability resulting from an injury to his right leg and ankle (particularly the ankle) sustained in an accident which occurred December 23, 1955, during the course and within the scope of plaintiff's employment by the city. The action is brought directly against the compensation insurer; the employer was not made a party to these proceedings.
In his petition plaintiff prays that he be declared totally and permanently disabled and awarded compensation at the rate of $30 per week, not to exceed 400 weeks, commencing December 23, 1955, with interest of 5% on all past due weekly installments from due date, until paid, and the sum of $10,000 for medical expense incurred or to be incurred[1], together with $5,000 penalties and $3,000 attorney's fees because of defendant's arbitrary and capricious refusal to pay medical expense incurred and compensation payments due.
The evidence is virtually undisputed and shows that plaintiff, as alleged, was injured on December 23, 1955, while fighting a fire in the City of Bogalusa, following which injury he was paid his regular salary of $330 per month by the city and also compensation at his admittedly correct rate of $30 per week until June 1, 1957, during which interval he performed no work whatsoever.[2] From June 1, 1957, to September 1, 1957, plaintiff received only compensation at the rate of $30 weekly. During the interval between June 1, 1957, and September 1, 1957, the city authorities notified plaintiff he would either have to resign his position or return to work. On some undisclosed date prior to September 1, 1957, plaintiff made application for reinstatement to his former position in pursuance of which, on September 1, 1957, he was reinstated under the classification of Fire Driver effective May 31, 1957, at a salary of approximately $350 per month which he received from September 1, 1957, until the filing of this suit on May 17, 1958.
Defendant discontinued weekly compensation payments when plaintiff returned to work on September 1, 1957. Defendant has also refused to pay any medical expense incurred by plaintiff since September 1, 1957, because defendant contends plaintiff's disability did not extend beyond said date. In the lower court defendant filed a plea of prematurity and exceptions of no cause and no right of action which were not argued or passed upon in the lower and are not urged on this appeal and, therefore, must be considered abandoned.
After trial on the merits, the learned trial judge rendered judgment in favor of plaintiff adjudging plaintiff totally and permanently disabled and awarding plaintiff compensation at the rate of $30 per week, not to exceed 400 weeks, with interest on past due weekly installments at 5% per annum from due date, until paid, subject to a credit *553 of $30 per week for the period December 23, 1956 to May 31, 1957 (during which interval plaintiff received full wages from the city in addition to compensation from defendant) and further credit in the amount of $30 weekly during the period December 23, 1955 to September 1, 1957, in which defendant paid weekly compensation benefits of $30. In addition, the trial court allowed defendant credit for wages paid by the city subsequent to plaintiff's reinstatement of September 1, 1957, on the finding such wages were unearned and, therefore, constituted payments in lieu of compensation. Plaintiff was also awarded the sum of $350 as Attorney's fees.
In his brief counsel for plaintiff concedes plaintiff's appeal is limited to consideration of the correctness of the trial court judgment granting defendant credit for wages paid subsequent to September 1, 1957 and plaintiff's request for an increase in the amount of attorney's fees awarded.
Defendant has appealed that portion of the judgment decreeing plaintiff totally and permanently disabled and denying defendant credit for wages paid by the city from December 23, 1955 to December 23, 1956, in conformity with the provisions of LSA-R.S. 33:1995. In this connection, defendant maintains that payment of plaintiff's full salary by the city for the year next succeeding plaintiff's injury, although paid pursuant to the aforesaid statutory provision was nevertheless gratuitous and should be credited against compensation due. On this issue plaintiff contends the payments made in accordance with the statute were forced or compulsory as differentiated from voluntary payments and, therefore, the learned trial judge properly held such payment of wages should not be permitted to constitute a credit against compensation payable. Finally, defendant contends the constitution of this state provides[3] that an applicant for reinstatement to a formerly held civil service position must prove physical fitness as a prerequisite to classified reemployment consequently plaintiff is barred or estopped from claiming disability beyond June 1, 1957, on which date he was reclassified as a Fire Driver.
Although counsel for plaintiff in brief announces the question of plaintiff's disability was not appealed we cannot agree with that statement considering defendant has presented this particular question both in oral argument and brief.
Plaintiff's duties as Fire Driver consisted of driving ponderous fire trucks and mobile equipment to the scene of a fire and there assisting in the control of the fire as directed by his superior officers. His work in such capacity requires soundness of limb in that considerable strength is needed to steer and control the large trucks and apply the brakes thereof when necessary. In addition, in combatting fire, he is often required to enter burning buildings, climb ladders and walk through debris which is admittedly strenuous and hazardous work. It further appears that a Fire Driver spends only approximately 5% of this time in actually fighting fires, the additional 95% being spent in and about the fire house or station and being devoted to the maintenance and care of the fire station, fire trucks, equipment and answering the telephone. It is undisputed that since his return to work plaintiff has been unable to actively participate *554 in the fighting of fires and that his activities have been confined exclusively to work in and about the fire station.
The testimony shows that plaintiff, a rather large individual standing approximately 6 feet 3 inches in heighth and weighing approximately 230 pounds, sustained severe injury to his right ankle in the course of his employment following which he was hospitalized. Nine days subsequent to his injury his right leg and ankle were placed in a cast which was removed shortly thereafter because of pain and inflammation resulting from its application. While in the hospital plaintiff was seen by Dr. L. L. Lancaster who attended plaintiff from the date of his injury until April 28, 1958, during which interval several casts were applied and removed and plaintiff administered innumerable physical therapy treatments. Dr. Lancaster examined plaintiff for the last time on January 5, 1959. He testified as a witness and stated that on the occasion of his last examination he found plaintiff still complaining of pain in the ankle and noted the ankle to be unstable. Dr. Lancaster was of the opinion plaintiff had attained maximum recovery but that plaintiff was still unable to perform the arduous services required of a Fire Driver.
Dr. Irving Redler, an Orthopedist, examined plaintiff on April 6, 1956, upon referral from Dr. Lancaster. At this time plaintiff was walking with the aid of crutches and Dr. Redler found the right ankle painful and inflamed to the extent it was ¾ inches larger than the left. Dr. Redler also noted atrophy of the right calf to such degree it was 3/4 inches smaller than the left. At this time Dr. Redler was of the opinion plaintiff should fully recover within six months. On June 14, 1956, plaintiff returned to Dr. Redler in a walking cast and without the aid of crutches. Plaintiff consulted Dr. Redler again on June 18, 1956, on which date plaintiff's cast had been removed. On this latter occasion Dr. Redler found both the pain and swelling considerably reduced and plaintiff able to get about with comparative ease. Dr. Redler again saw plaintiff in May, 1957 and noted a remarkable improvement in that plaintiff then had only a slight residual disability which Dr. Redler attributed to atrophy of the thigh and leg muscles. In essence, Dr. Redler concluded plaintiff sustained a 10% disability of the lower right extremity and considered plaintiff able to resume his former employment. He was also of the opinion that use of the limb would promote further improvement.
Dr. Rufus H. Alldredge, an Orthopedist, testified plaintiff first visited him on July 27, 1956, pursuant to the recommendation of Dr. Lancaster. He stated he has seen plaintiff a total of 24 times in addition to numerous visits to his office when plaintiff was administered physiotherapy treatments. Because of plaintiff's size and weight, the existence of a congenital deformity in plaintiff's feet and the injury, Dr. Alldredge found plaintiff to be suffering from a 25% disability of the extremity involved and deemed plaintiff disabled from performance of the duties incumbent upon a fire driver.
It is an elementary legal proposition that the question of disability is purely factual and must be determined in the light of the circumstances of each particular case. In the case at bar the evidence is overwhelmingly to the effect plaintiff is no longer able to perform the most important aspects of his employment, namely, active participation in the control and combatting of fires. Since his injury plaintiff has never answered a fire call and has never reported to the scene of a fire. His activities have been confined solely to maintenance work in and around the fire station. He is neither able to drive fire engines or equipment nor perform any duties incident to the actual fighting of fire. Although there is some medical evidence to the effect plaintiff is no longer disabled, the evidence as a whole convinces us beyond any doubt that plaintiff is totally and permanently disabled and the decision of the trial judge in so holding was imminently correct.
*555 Defendant's contention that plaintiff should be estopped from asserting his alleged disability subsequent to his reinstatement September 1, 1957 (retroactive to May 31, 1957), predicated on the afore-mentioned constitutional provision, is based on the premise plaintiff thus assumes a contradictory position claiming on the one hand physical fitness for purposes of re-employment while on the other hand avowing total permanent disability to obtain compensation benefits. Irrespective of the contradiction thus involved, we reiterate that disability is purely a question of fact. Pretermitting the implication or presumption of physical fitness attributable to plaintiff's reinstatement, such inference or assumption must yield to the affirmative contrary evidence we find in the record of the case at bar. Moreover, if plaintiff's action in this regard involved moral turpitude to any degree whatsoever, plaintiff's employer was a party thereto and fully cognizant thereof, and, under such circumstances may not in good conscience predicate an equitable estoppel thereon.
We shall first consider plaintiff's contention the trial court erred in granting defendant credit for wages paid plaintiff subsequent to September 1, 1957.
It is the announced and settled jurisprudence of this state that the purpose of our Workmen's Compensation Law is to insure employees against loss or diminution of earning capacity and prevent their becoming public charges upon sustaining disability while engaged in hazardous employment. Numerous cases have so held but we deem it necessary to cite only Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, in support of the foregoing principle.
The question of whether wages paid subsequent to injury are earned or paid gratuitously in lieu of compensation has been considered by the appellate courts of this state on many occasions and under circumstances involving different legal principles, namely, pleas of prematurity and prescription, exceptions of no right and no cause of action and with respect to allowance of credit to employers for such payments as an off-set to compensation due employees. We believe the jurisprudence of this state settled to the effect that payment of unearned wages in lieu of compensation (unaccompanied by concurrent payment of compensation as such) is considered a gratuity intended by the employer and employee as a substitute for compensation benefits and the employer entitled to credit for one week of compensation for each week during which such unearned wages paid equal or exceed the compensation rate of the employee. Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; White v. Calcasieu Paper Co., La.App., 96 So.2d 621; Myers v. Jahncke Service, Inc., La.App., 76 So. 2d 436; Pohl v. American Bridge Division U. S. Steel Corp., La.App., 109 So.2d 823. These same cases also recognize and hold that if wages paid a disabled employee subsequent to injury are earned by the employee in the performance of work of a character different from that in which the employee was engaged at the time of injury, such wages are considered earned in a different occupation consequently there is no implied agreement they are paid in lieu of compensation and the employer may not receive credit therefor against compensation payable.
Learned counsel for plaintiff also maintains the trial court improperly found the ruling in the Mottet case, supra, was not decisive of the issue presented and fell into further error in concluding the Pohl case, supra, was decisive of the case at bar.
Esteemed counsel for defendant places considerable reliance upon the case of Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, decided by our Supreme Court in 1940. In the Carlino case, plaintiff, a laborer employed by the City of Alexandria in the repair of streets, sustained an injury resulting in disability. The employee returned to *556 work in the same capacity and was assigned to lighter duties but did occasionally engage in some of the heavier work. The Supreme Court held the employee was not entitled to collect both wages from the employer and compensation benefits from the insurer. We believe the ruling in the Carlino case to be in accord with the controlling principles hereinabove enunciated in that it holds an employee receiving full wages for performance of only part of his former duties is in fact paid a gratuity in lieu of wages and consequently may not, at the same time receive compensation benefits. In the Mottet case, the court found that the employee was engaged in work of a different character and held the employer was not entitled to credit for wages paid in the performance of such work. The following language appearing in the Mottet case appears appropriate [220 La. 653, 57 So.2d 220]:
"The defendant contends that credit should be given for the wages paid the plaintiff as night watchman after he became disabled to carry on his trade of glass cutting. It appears that after the plaintiff had become disabled to perform the duties of his trade he was employed by the defendant as night watchman. As pointed out in the case of D'Antoni v. Employers' Liability Assurance Corporation, 213 La. 67, 34 So.2d 378, the suit of an employee who is actually earning wages cannot be dismissed on a plea of prematurity because he is not receiving compensation and conversely if the wages paid him are in reality a gratuity and not for the performance of the work that the payment of such wage or gratuity is equivalent to the payment of compensation. It is well established that disability to do work of a reasonable character is deemed total whenever it appears that the injury causes a total disability to continue carrying on the trade or work for which the employee is suited by training and experience or to do any work of a similar character. Ranatza v. Higgins Industries, 208 La. 198, 23 So.2d 45; Hughes v. Enloe, 214 La. 538, 38 So.2d 225. In Ranatza v. Higgins Industries, supra, this court pointed out that the disability to perform work of a similar character as that engaged in is considered total disability within the meaning of the compensation law notwithstanding the injured employee may have succeeded in obtaining employment, after the accident, of a different kind and not requiring any special skill or training. The wages paid the plaintiff as night watchman were earned in a different kind of work, not requiring any special skill or training, and cannot be considered in the nature of compensation or given credit on the award of compensation to the plaintiff."
Although the principles set forth in the hereinabove cited cases are quite clear and easily understood, application thereof to the facts and circumstances of specific cases has led to seeming conflicts and confusion. Obviously the question of whether a particular employee is engaged in work of a character different from that which he pursued when injured or is undertaking the same employment but only partially fulfilling the duties thereof, is a question of fact to be adjudicated and determined in the light of all the circumstances surrounding each individual case.
Plaintiff's contention that the trial court erred in granting defendant credit for wages paid by the city subsequent to plaintiff's return to work on September 1, 1957, is based on the premise the lower court erroneously concluded plaintiff was not earning his wages and the lower court should have held, under the facts of this case, that plaintiff's wages were fully earned in the performance of work of an entirely different character. In this connection, it is not disputed that following his return to work plaintiff never again drove a fire truck or actively participated *557 in the extinguishment of a fire. From the date of his reemployment plaintiff's activities were confined solely to the performance of duties in and about the fire station, the polishing and cleaning of equipment and answering the telephone. Plaintiff was one of a crew of approximately four employees who worked as a team. In rotation one member of the crew or team always remained in the fire station to receive telephone calls and relay messages whenever the remaining members of the team answered a fire call. Plaintiff was no longer physically able to take his turn on the trucks and he was always the one who remained behind in the event of fire. It is conceded that plaintiff performed all of the duties expected of a Fire Driver in and around the fire station. Counsel for defendant argues that plaintiff's reemployment was under the classification of Fire Driver and since he was able to perform approximately 95% of the duties required of such an employee, he should, therefore, be regarded as having been employed in the same type of work in which he was engaged on the date of the accident. Conversely, plaintiff argues that since he was unable to drive a fire truck or fight fires, he was in fact employed in the performance of work of an entirely different character. Obviously resolution of the issue turns upon an interpretation of the admitted facts.
In Pohl v. American Bridge Division U. S. Steel Corp., La.App. Orleans, 109 So.2d 823, credit was allowed the employer for wages paid a disabled iron worker able to perform the duties of his trade at ground level but no longer capable of climbing or working aloft.
We note the following language on the subject matter appearing in Scalise v. Liberty Mut. Ins. Co., La.App., 84 So.2d 88, 93, wherein a plea of prescription was involved:
"In the present case, we find that the employee was admittedly disabled due to industrial injury from performing his climbing or heavier duties. When he returned to his employment, due to this fact mutually known to him and to his employer, he was assigned only the non-climbing or lighter duties; nevertheless, he was paid the full wages of a fully-physically-qualified welder and machinist, although able to perform and performing only partially the duties thereof. (At times when there was available no welding work he was capable to perform, he was assigned to the much less skilled and less remunerative duties of a water tender, although still drawing the higher full wages of a fully qualified welder and machinist.)
"Under these circumstances, we do not believe as a matter of law, that the employee, Scalise, was fully earning his wages. Both he and his employer state the wages paid were not commensurate with services rendered. Further, it is not what they contend the man is worth that is determinative herein, but it is a comparison of the nature of the duties and the pay prior to and subsequent to the accident that determines whether the employee is receiving wages or payments in lieu of compensation. When the wages paid a disabled employee are more than commensurate with the services rendered and the employee is not actually earning all of his pay, then there is a reasonable inference that the wages paid were intended as payments in lieu of or in the nature of compensation. Under the facts herein, we find that there was a relationship from which it can be implied that the wage payments made were in lieu of compensation, so as to interrupt the accrual of prescription. It constituted a recognition by the employer of the employee's industrial disability, and an implied agreement to pay and to receive these wage payments in lieu of compensation."
*558 In Beloney v. General Electric Supply Co., La.App., 103 So.2d 491 (decided subsequent to the Carlino and Mottet cases) credit was allowed for wages paid a disabled employee who performed his former duties in pain. Credit was allowed for full wages so paid on the theory the employee was not entitled to both wages and compensation. Writs were refused in the Beloney case and the jurisprudence therein established was reaffirmed in the later case of Smith v. Houston Fire & Casualty Ins. Co., La.App., 116 So.2d 730, 733, in which the following is noted:
"While the purpose of the act and the public policy of the State is to afford an injured employee support and maintenance during a period of disability, to prevent the injured employee from becoming a public charge and to aid in his rehabilitation, it is not the intent and purpose of the act, and it would be most inequitable, to permit an employee to recover, at one and the same time, both wages and compensation from his employer or his employer's insurer. Goodman v. Hillyer, Deutsch, Edwards, Inc. [La.App., 49 So.2d 60], supra."
In Myers v. Jahncke Service, Inc., La. App., 76 So.2d 436, it was held that a shipfitter who suffered the loss of a hand and was reemployed as a "Pusher" at approximately his former rate of pay, was engaged in different employment and the employer was not entitled to credit for wages paid in such capacity since said wages were fully earned.
White v. Calcasieu Paper Co., La.App., 96 So.2d 621, involved the case of a machine room employee who was transferred to guard duty following injury. In the White case it was held that wages earned as a guard were fully earned in work of a different character and the employer was not entitled to credit therefor against compensation due.
Considering the case at bar in the light of the foregoing jurisprudence we find that upon his return to work on September 1, 1957, plaintiff was reinstated as a Fire Driver at his former rate of pay. It is undisputed that upon resumption of his employment ninety-five per cent of his time was spent in doing exactly what he did previous to his injury. The remaining duties of his position (which ordinarily consumed only five per cent of his time) were performed by fellow employees who were obviously "carrying" plaintiff. The action of his co-workers in relieving him of the more arduous aspects of his employment (driving fire equipment and fighting fires) is indicative of an understanding between plaintiff, his employer and fellow workers to the effect plaintiff had been assigned to light duty for which he was being paid wages in lieu of compensation. In this regard, learned counsel for plaintiff argues that because plaintiff could no longer actively participate in fighting fires, it must be concluded he was employed in a totally different capacity which counsel characterizes as that of a janitor or custodial employee. We do not so view the circumstances of plaintiff's employment considering that when plaintiff remained behind in the fire house while other employees were answering calls, plaintiff was actually performing a service rendered by a fully qualified Fire Driver. It is not shown that the City employed janitors to maintain order and cleanliness in the fire stations, on the contrary it is expressly shown such duties were performed by Fire Drivers. On this issue we point out that if, as argued by counsel, plaintiff's duties were merely those of a janitor, the wages paid therefor were grossly in excess of those normally paid for janitorial services and could not be considered fully earned.
We conclude the wages paid plaintiff following his return to work were not fully earned in the performance of work of a different character but were gratuitously paid for the performance of only a portion of his regular duties and credit for such *559 payments must be allowed defendant herein.
We next consider defendant's contention the trial court erred in refusing to allow credit for one week of compensation for each week of the 52 week period next succeeding plaintiff's injury during which defendant paid full wages of approximately $330 per month in compliance with the statute and ordinance hereinabove mentioned.
The statute and ordinance in question appear to have been motivated by humane impulses designed to provide financial assistance to ill or disabled firemen employed by the City of Bogalusa to the end that such employees and their dependents will not become public charges and objects of charity in the event of inability to work due to illness or disability induced by accident. We find no language in either the statute or ordinance indicative of intent to render the benefits therein provided in lieu of compensation payments to which the covered employees might be entitled. Indeed the wording of both the statute and ordinance are extremely broad from which we conclude the legislature and municipality intended the benefits payable thereunder shall be in addition to compensation. In this respect the case at bar is strikingly similar to France v. City of New Orleans, La.App., 92 So.2d 473, 479 wherein defendant was denied credit against compensation for sick leave benefits paid plaintiff employee. We quote with approval the following appearing in the France case, supra:
"It is conceded that after his operation of November 2, 1954, plaintiff was placed on `sick leave' for a period of 47 days and received `relief' at the rate of $195 per month for the period between November 2, 1954, to June 21, 1955.
"The City of New Orleans is not entitled to a credit for the amount of the sick allowance plaintiff received as this cannot be considered the equivalent of workmen's compensation benefits. The City has in vogue a system whereby its employees accumulate, commensurate with the tenure of their employment over a period of time, an annual amount of `sick leave' and our thought is that when an incapacitated employee receives the benefits thereof he is only being paid that which he has already earned by virtue of past services rendered to the employer."
The benefits which the city paid pursuant to the above authority may be considered similar to contractual rights obtained by negotiation between employer and employee wherein it is anticipated that such duplication will result. It appears that in such instances, in the absence of agreement that such benefits shall be reduced by the amount of compensation paid, the employees are entitled to both. See 2 Larson's Workmen's Compensation Law (1959) Section 97.63, page 505.
We note with considerable interest that both benefits received by plaintiff were paid pursuant to statutory compulsion. There can be no serious contention the legislature lacked authority to provide that the benefits conferred by LSA-R.S. 33:1995 shall be in addition to payments due under our compensation law. We believe the legislature intended the benefits payable thereunder are to be viewed as benefits earned by virtue of past services rendered, for which the employer (or the employer's insurer) shall not be entitled to credit as against compensation payments due.
Considering now the effect of the voluntary payment of wages during the interval December 23, 1956, to and including May 31, 1957 (during which period plaintiff performed no services), we observe that our compensation law (LSA-R.S. 23:1206) provides voluntary payments made by an employer may be deducted from payments to be made by shortening the period during which compensation shall be paid.
*560 Our jurisprudence appears settled to the effect that voluntary payments by the employer in addition to compensation cannot be claimed as a credit unless it was expressly so agreed between the employer and employee.
In Rhodus v. American Employers Ins. Co., La.App., 9 So.2d 821, an employer was denied credit against its compensation liability for pension benefits paid an employee. While the opinion in the Rhodus case does not expressly state the employee was retired because of disability, it carries the implication that disability necessitated his resignation because of inability to perform his duties after a long period of service.
On this same question we again refer to the France case, supra, wherein sick benefits paid by an employer, for the same disabling injury for which compensation was due, were not allowed as a credit against compensation payable to the employee. Finally in Haskett v. City of Shreveport, La.App., 17 So.2d 385 we find gratuitous payments were disallowed as a credit against compensation due in the absence of evidence that such payments were intended as compensation.
In the case at bar, the evidence shows the employer was fully aware plaintiff was receiving compensation payments in the interval between December 23, 1956 and May 31, 1957. Despite such knowledge the employer continued to pay plaintiff's full wages even though the statute was no longer applicable. Such payments, during a period in which plaintiff performed absolutely no services whatsoever, are not shown to have been made as compensation. On the contrary, the evidence in this case convinces us that both plaintiff and his employer understood the payments were a gratuity in addition to compensation due and being paid.
It follows that our brother below erred in giving defendant credit for the wages paid plaintiff between December 23, 1956 and May 31, 1957.
The trial court correctly awarded plaintiff judgment in the sum of $281.34 for medical expenses incurred prior to trial. The expenses in question consist of a bill submitted by plaintiff to defendant on May 3, 1958, in the sum of $117.87 of which total $54.95 covered a statement previously submitted, $11.50 represented travel expense from Bogalusa, Louisiana, to New Orleans, Louisiana, to purchase two pairs of corrective shoes at a cost of $51.42; the sum of $48.82 owed Drs. Alldredge and Riordan, $6 balance due Dr. Lancaster; travel expense incident to 6 trips from Bogalusa to New Orleans @ 5¢ mile to consult Dr. Alldredge and $42.80 expense of 107 visits to office of Dr. Lancaster in Bogalusa at 40¢ per trip.
It is admitted that prior to filing suit, plaintiff presented his medical bills to defendant's representative Bateman who forwarded them to defendant pursuant to which checks in payment thereof were prepared and returned to Bateman for transmission to plaintiff who in turn paid the respective accounts. Upon the filing of suit, defendant refused to pay any further medical bills including those incurred prior thereto. Considering defendants admitted medical liability in the sum of $10,000, we are at a loss to understand its refusal to pay the medical expenses in question. Regardless of defendant's liability for compensation beyond the date suit was filed, it was clearly responsible for the medical expense it refused to pay and, under the circumstances shown, its refusal was arbitrary and plaintiff is entitled to attorney's fees for recovery thereof.[4]
*561 Plaintiff is not entitled to medical expense in the amount of $10,000 as claimed but only to such expense as has been actually incurred or in fact accrued at the time of rendition of judgment in the lower court. Bickham v. Lester Danner, Inc., La. App., 86 So.2d 564. However, in view of our finding of total permanent disability and the existence of the special medical contract shown herein, plaintiff is entitled to judgment reserving his right to recover future medical expense, which may accrue or be incurred in the treatment of his injuries subsequent to rendition of judgment in the lower court, to a maximum of $10,000.
The trial court awarded plaintiff attorney's fees in the sum of $350 for services rendered in securing judgment against defendant with respect to the previously mentioned unpaid medical bills in the aggregate of $281.34. Counsel for plaintiff asks for an increase in this award and points out that the fee awarded should be predicated upon the amount of work performed and not the relatively small amount of the claim. In this respect we thoroughly agree with learned counsel and are of the opinion that, considering the complexity of this litigation and the amount of time, effort and energy expended by esteemed counsel in the prosecution thereof, an award of attorney's fees in the sum of $500 would adequately compensate counsel for services rendered.
For the reasons herein set forth the judgment appealed from is affirmed insofar as it decreed plaintiff totally and permanently disabled and awarded plaintiff judgment against defendant at the rate of $30 per week, commencing December 23, 1955, for the duration of said disability not to exceed 400 weeks, with interest at the rate of Five (5%) per cent per annum on each past due weekly installment from due date, until paid; affirmed insofar as it denied defendant credit on compensation due at the rate of one week of compensation for each week in which plaintiff received full salary during the 52 week period December 23, 1955 to December 23, 1956; reversed insofar as it allowed defendant credit on compensation due at the rate of one week of compensation for each week in which plaintiff was paid full salary during the interval December 23, 1956 to May 31, 1957, affirmed insofar as it allowed defendant credit against compensation due at the rate of one week of compensation for each week during the period December 23, 1955 to September 1, 1957, in which defendant paid plaintiff weekly compensation benefits of $30; affirmed insofar as it allowed defendant credit for one week of compensation for each week commencing and subsequent to September 1, 1957, during which plaintiff received wages from the City of Bogalusa, equal to or exceeding compensation due; and amended insofar as it awarded plaintiff attorney's fees in the sum of $350, and judgment rendered herein decreeing plaintiff totally and permanently disabled and awarding plaintiff judgment against defendant General Accident Fire and Life Assurance Corporation, Ltd., in the sum of $30 per week commencing December 23, 1955, for the duration of said disability, not to exceed 400 weeks, with interest at the rate of Five (5%) per cent per annum, on each past due weekly installment from due date, until paid, subject to *562 credit for one week of compensation due for each week during the interval December 23, 1955, and September 1, 1957, in which defendant General Accident Fire and Life Assurance Corporation, Ltd., paid plaintiff weekly compensation benefits of $30, also subject to credit for one week of compensation for each week subsequent to September 1, 1957, in which plaintiff was paid full wages by the City of Bogalusa, reserving plaintiff's right to recover future medical expense incurred to a maximum of $10,000 and awarding plaintiff judgment against defendant in the sum of $500 as attorney's fees. All costs in the lower court and cost of this appeal to be paid by defendant.
Affirmed in part, reversed in part, amended and rendered.
NOTES
[1] The petition alleges and defendant admits that by special contract with the city, defendant has extended its liability for medical payments to certain city employees, including plaintiff, to the sum of $10,000.
[2] Pursuant to the provisions of LSA-R.S. 33:1995, which reads as follows:

"Every fireman in the employ of a municipality to which this Sub-part applies, shall be entitled to full pay during sickness or incapacity not brought about by his own negligence or culpable indiscretion for a period of not less than fifty-two weeks,"
Civil Service Rules and Regulations of the City of Bogalusa provide that firemen be paid full salary for at least one year from date of injury. In the case at bar plaintiff was paid his full salary for more than one year, or until June 1, 1957.
[3] L.S.A. Constitution Art. 14, § 15.1, subd. 20, par. d, LSA. "Any regular employee who resigns from a position in the classified service may, with the prior approval of the board, be reemployed in a position of the class or in a position of any lower class for which he is qualified, provided, that the reemployment is made within four years of the date of resignation, and that no person whose name appears upon either the reinstatement, employment, or reemployment list for a class to which any such person is reemployed is willing to accept an appointment therein. Any person who is reemployed shall be physically fit to perform the duties of the position to which he is appointed. He shall furnish a favorable medical certificate to the appointing authority and the board after a recent examination by a practicing physician."
[4] LSA-R.S. 22:658"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees. Amended and reenacted Acts 1958, No. 125."