BOLIN, Judge.
This is an appeal from a judgment of the lower court awarding plaintiff the maximum weekly benefits under the Louisiana Workmen’s Compensation Statute for the loss of sight of his right eye while employed as a tractor mechanic for the defendant’s insured.
Our learned brother below assigned written reasons for his findings in which we feel that he very ably discussed the facts and disposed of the legal issues involved. Because we are in complete accord with his findings, we adopt his opinion in its entirety and make it the judgment of this court, which provides as follows:
“About April 28, 19S9, plaintiff suffered an injury to his right eye when some foreign material struck it while the plaintff was working. The plaintiff was off work for about four weeks and paid compensation for three weeks. In June of 1960 plaintiff’s eye cause (sic) him additional difficulty; plaintiff has lost substantially all the sight of his right eye.
“The eye specialist testified that the foreign substance in plaintiff’s eye was almost microscopic in size, and probably was chipped enamel with a lead content that prevented its removal by magnetic processes ; that the continued presence of the foreign body in the right eye caused the loss of sight in that eye, and that sympathetic ophthalmia of the left eye was a constant threat as long as the right eye was not removed. The specialist recommended removal of the right eye to prevent the loss of sight in the left eye.
“Plaintiff returned to work with the same employer about May 26, 1959, and has continued employment without interruption, with the same wages or greater wages than he received before the injury.
“The defendant admits that there is compensation due for 100 weeks for the loss of an eye. The plaintiff contends that he is totally and permanently disabled, and that defendant’s failure to agree to this contention is arbitrary, subjecting the defendant to penalties.
“At about the time plaintiff lost the sight of his injured eye, he was promoted from mechanic to shop foreman, and received an increase in pay. The testimony shows that the plaintiff continues to work as a mechanic, both in the shop and on service calls for the company. (Some repairs to farm machinery are made in the field.) The evidence further shows that the plaintiff cannot perform all the specific tasks involved in his work as a mechanic that he did perform before the injury. He frequently calls for and is given assistance by his fellow workers in handling small ob *472 jects, making fine adjustments, or working in places where it is difficult to see.
“In addition to continuing to work as a mechanic, as before the injury, the plaintiff now is given the duty of parceling out the work among the other mechanics employed in this shop, and directing them in their different tasks. The shop is relatively small, with only a few other mechanics employed, with the result that the job of 'foreman’ does not prevent the plaintiff from having time to work as a mechanic himself.
“Doctor Crain testified that he was not familiar enough with the specific duties of a farm machinery mechanic to give an opinion as to plaintiff’s capacity to per-, form the tasks involved in that occupation. However, Doctor Crain established that the plaintiff would be disabled from performing any task requiring binocular vision. Some of plaintiff’s work would involve exact measurements, alignments, and certain mechanical manipulations. Doctor Crain’s specialty also involves such activity. Doctor Crain testified that he would be limited in his practice by the loss of any eye, in any activity requiring binocular vision.
“From all the evidence in the case, the Court is satisfied that there are some duties and some tasks involved as a farm machinery mechanic which Mr. Lindsey cannot now perform. His employer testified that he would not employ a mechanic handicapped as Mr. Lindsey is, except for the scarcity of experienced farm machinery mechanics. His testimony corroborated Mr. Lindsey’s; any mechanic handicapped like Mr. Lindsey would necessarily require the assistance of others in the performance of a portion of his duties.
“Therefore, the question is whether an employee, although continuing to work for his same employer at an increased wage, with certain added supervisory powers that he did not have before the accident, is entitled to compensation.
“The defendant relies on a line of cases holding that an injured employee, working for his former employer, with the same duties and at the same rate of pay as before the injury, is not entitled to both his wages and workman’s compensation payments at the same time; that the defendant is entitled to credit for weeks worked under such conditions.
“The plaintiff relies on a line of cases following Mottet v. Libbey-Owens-Ford Glass Company, 220 La. 653, 57 So.2d 218.
“The Second Circuit Court of Appeal considered a question like the instant one in Smith v. Houston Fire & Casualty Insurance Co., 116 So.2d 730 (1959). There, the plaintiff, while an investigator for the Louisiana Forestry Commission, suffered a hernia, but continued his employment in the same capacity, discharging the same duties, and receiving the same pay, although working under pain and discomfort and wearing a truss to minimize the disability. The trial court awarded the plaintiff maximum benefits under the Workmen’s Compensation Act, subject to a credit for each week in which the plaintiff received his wages. Both the plaintiff and defendant appealed, the plaintiff contending that the judgment should be amended, allowing compensation in addition to wages from the date of the accident, or compensation payable beginning on the date he is forced to discontinue his employment.
“The Second Circuit Court of Appeal did not cite the Mottet case nor the Myers v. Jahncke case [La.App., 76 So.2d 436]. It referred to Hulo v. City of New Iberia, 153 La. 284, 95 So. 719, and Carlino v. United States F & G, 196 La. 400, 199 So. 228. Malone’s Work, and Daigle v. Higgins [La.App., 29 So.2d 374] were also cited, and the court held that the employer was allowed credit for nine weeks’ wages earned by the injured employee, while working for his former employer at the same time, with the same duties, and at the same rate of pay.
*473 “The First Circuit Court of Appeal considered this matter in 1957, in White v. Calcasieu Paper Company, 96 So.2d 621. There the plaintiff worked in a “machine room,” suffered an injury, and was later reemployed as a guard. The defendant demanded credit for wages paid to the plaintiff subsequent to the injury. The First Circuit Court said:
‘Since plaintiff’s wages subsequent to the accident and during the five months before the disability became legally manifest were paid, at a different type of work (except for two or three weeks), and were fully earned and not paid pursuant to an express or implied agreement that such wage payments were to be received in lieu of compensation, defendant is entitled to no credit for same. Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; Myers v. Jahncke Service, Inc., La.App. Orleans, 76 So.2d 436. The Wallace and Mottet cases indicate that in such instances the date that compensation liability commences is the date the disability becomes legally manifest, that is, when the employee is no longer able to perform his duties and his employment terminates; in the present instance, January 25, 1954. Defendant is of course entitled to credit for the weekly compensation payments made by it to White from January 25, 1954 until April 17, 1955.’
“Myers v. Jahncke Service, 76 So.2d 436 (Orl.App.1954; certiorari denied February 1955) is a case very similar to the instant case. Myers was a ship-fitter whose right hand was mangled and subsequently amputated two inches above the wrist.
“The accident occurred October, 1950. Myers did no work until October, 1951 when he was re-employed as a ‘pusher’. Defendant had never employed pushers before. His earnings as a pusher equaled his previous earnings as a ship-fitter.
“The defendant’s alternative demand was that the wages paid be credited against the compensation due, on a week for week basis.
“The court cited Daigle v. Higgins Industries [La.App.], 28 So.2d 381, and [La. App.], 29 So.2d 374, which the court said presented the identical issues. The court had held in 28 So.2d that wages paid after the employee’s return to work should not be considered as a credit against compensation which might ultimately be held due the worker. On rehearing, in 29 So.2d, the court reversed itself and held that the weeks in which the injured workman earned wages from the same employer approximating those earned before the accident should be deducted from the 400 weeks’ compensation otherwise due the employee.
“The court then stated that, ‘were it not for the decision of the Supreme Court in Mottet v. Libbey-Owens-Ford Glass Company, which is contrary to what we held in the Daigle case, we would adjudicate the issue before us on the basis of our conclusion in the Daigle case.’
“Then followed a recapitulation of the Mottet case (220 La. 653, 57 So.2d 218) : The Supreme Court, on a writ of review, found that a glass cutter had been injured and was subsequently re-employed as a night watchman. The defendant contended that it should have been given credit against compensation for wages that plaintiff earned as a night watchman. The language of the Supreme Court emphasized that the wages that plaintiff earned as a night watchman were earned in a different kind of work, not requiring special skill or training, and apparently for that reason, the Supreme Court considered that those wages could not be considered in the nature of compensation.
“The Orleans Court of Appeal refused to give the compensation carrier credit for the wages paid to Myers, against the compensation due him.
*474 “The Orleans Court of Appeal seems to have clarified the decision in Myers v. Jahncke, in Beloney v. G. E. Supply Co., 103 So.2d 491 (Orl.App.1958). There a truck driver fell and hurt his heel and hand. During his disability he was paid $30 a week. The plaintiff returned to work four months after his injury, doing exactly the same kind of work as he was doing before the accident, and receiving the same pay. The trial court found as a fact that he worked in pain, as a result of his injury. The question on appeal was whether the defendant was entitled to credit for the weeks which plaintiff was paid his wages after his return to work. The court discussed its previously decided Myers v. Jahncke case and distinguished it from the Beloney case because Beloney returned to his former employment and was ‘performing identically the same duties that he engaged in prior to his injury.’ The court further stated that, ‘If he had resumed working for the defendant and performing duties which were different from his former occupation, such as occurred in Myers v. Jahncke Service, he would then be entitled to earn the wages emanating therefrom together with the payment of compensation.’
“From the evidence in the case and from the decisions, we believe that there is 'enough difference in the plaintiff’s present duties to take him out of the ‘same employer, same duty, same rate of pay’ rule. Finding a substantial change in the plaintiff’s employment, and an actual disability to perform his former duties, we believe that he is totally and permanently disabled within the meaning of the act.
“This is not a case, however, for the application of penalties for the arbitrary or capricious failure to pay on the part of the defendant. With the plaintiff working for the same employer at an increased wage, and doing a substantial part of the same kind of job that he was doing before the accident, it was not unreasonable for the defendant to conclude that the plaintiff was not entitled to 400 weeks’ compensation. * * ”
The appellant sets forth the following errors in the judgment of the court below:
1. The trial judge erred in finding the plaintiff totally and permanently disabled within the meaning of the Louisiana Workmen’s Compensation Act.
2. Alternatively, appellant contends the lower court erred in failing to allow the defendant a credit of one weeks’ compensation for each such week that he continued his employment with the same employer for full wages.
It is our opinion that the lower court correctly disposed of both points raised by the defendant, and we see no reason to elaborate more fully on these specifications of error.
Plaintiff-appellee answered the appeal and again urged his claim for penalties and attorneys fees for the defendant’s refusal to pay the maximum compensation for total and permanent disability. We likewise find no error in this portion of the judgment and concur with the lower court’s conclusion that the refusal of the defendant insurer to pay the maximum compensation for total and permanent disability was not arbitrary or capricious under the facts of the instant case.
Affirmed.